## STATE OF CONNECTICUT *v.* ANGEL L. RODRIGUEZ, JR.
## (14212)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued March 24--decision released July 28, 1992

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, *Beth Merkin,* assistant public defender, and *Donald Dakers,* former public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

BORDEN, J. The defendant, Angel L. Rodriguez, Jr., appeals to this court[1] from the judgment of conviction, after a jury trial, of two counts of the crime of murder in violation of General Statutes § 53a-54a (a).[2] The defendant claims that the trial court improperly: (1) denied his motions to suppress evidence seized pursuant to two separate search warrants; and (2) instructed the jury on a statutory alternative for conviction for which there was no supporting evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of December 19, 1988, the

---

[1] The defendant appealed pursuant to General Statutes § 51-199 (b) (3), which provides: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds *twenty years.*"

[2] General Statutes § 53a-54a provides in pertinent part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

defendant was shot in the leg by Hector Rivera on Elliot Street in New Haven. Prior to this incident, the defendant and Rivera had an ongoing feud concerning Rivera's wife. As a result of the shooting, an arrest warrant was issued for Rivera but no arrest was ever made.

On the afternoon of February 19, 1989, Rivera and his brother encountered the defendant near the corner of Steven Street and Elliot Street in New Haven. Rivera chased the defendant and challenged him to a fight. The defendant left the scene. Later that evening the defendant met with two acquaintances, Joseph Ristorucci and Jose Ayala, and told them that he was going to shoot Rivera. The defendant then showed Ristorucci a .44 caliber pistol that he was carrying.

At approximately 9:45 p.m., the defendant, who was driving a 1981 brown Datsun station wagon on Spring Street in West Haven, pulled alongside a vehicle occupied by Rivera and Gilberto Rodriguez, and fatally shot both occupants. At approximately 11 p.m., the defendant returned home and told his girlfriend that he had shot Rivera and the other occupant of the vehicle.

The state, in two separate informations, charged the defendant with murder, alleging that he, "with intent to cause the death of another, shot Hector Rivera and thereby caused his death," and "with intent to cause the death of another, shot Gilberto Rodriguez, and thereby caused his death." The defendant filed two motions to suppress certain evidence seized pursuant to two search warrants.[3] The trial court denied both

---

[3] Pursuant to a warrant to search a Mazda automobile, the West Haven police seized four .44 caliber hollow-point bullets from the floor of the vehicle. This evidence was introduced at trial because the bullets displayed similar characteristics to the bullets taken from the victims' bodies.

Pursuant to a warrant to search a Datsun automobile, the West Haven police seized cigarette butts, glass shards and a gunpowder particulate from the vehicle. A saliva sample taken from the cigarette butts was introduced

motions. The defendant also excepted to the trial court's instruction to the jury that the state must prove beyond a reasonable doubt that "the person causing the death of another must have done so with the intent to cause death. Either that of the victim or of a third person." The jury returned guilty verdicts on both informations and the court rendered one judgment on the informations. This appeal followed.

I

The defendant first claims that the trial court improperly denied his motion to suppress the evidence seized from a Mazda automobile pursuant to a search warrant dated February 22, 1989. Specifically, the defendant contends that probable cause did not exist to issue the warrant because the affidavit supporting the warrant did not adequately set forth the police informants' bases of knowledge or reliability. We disagree.

The following facts are relevant to this claim. West Haven police presented to a judge of the Superior Court a warrant application to search an unregistered reddish-brown 1979 Mazda RX 7. After providing background information on the investigation of the murders, the affidavit stated that the affiants, who were police officers, "along with other members of the Homicide Investigation Unit, developed one Angel Rodriguez, Jr., as a suspect. Information developed by the unit revealed that Mr. Rodriguez, Jr., is involved in the narcotics trade in the same geographical area as that used by Hector Rivera. That said unit was able to develop information regarding the rivalry between Rodriguez and Rivera and that on Dec. 19, 1988, one Hector

at trial to link the defendant to the Datsun. The glass shards were also introduced because they displayed characteristics similar to the shattered glass taken from the victims' vehicle. Finally, the gunpowder particulate was introduced to demonstrate that a firearm had been discharged in the vehicle.

Rivera did shoot Angel Rodriguez, Jr., in his left leg, in an apparent dispute. This was confirmed by New Haven Police Department investigation, which resulted in the acquisition of an arrest warrant for Rivera." Additionally, the affidavit stated that "several informants, who have given information to police officers in the past involving narcotic[s] related cases, which have [led] to arrests and convictions in a State Court of Law, related to the undersigned that Mr. Rodriguez has made overt physical threats toward Mr. Rivera for retribution for the aforementioned assault." The affidavit then related that informants had stated that the defendant had been seen in possession of a large caliber revolver within four hours prior to the murders, and that forensic evidence showed that the victims had been shot with large caliber bullets.

The affidavit further stated that the defendant had admitted that he owned an unregistered 1979 Mazda RX 7 that was parked in front of his residence. The affidavit stated that on the floor in front of the Mazda front passenger seat, in plain view of the officers, was a jacketed .44 caliber round of ammunition.

## A

Before we determine whether probable cause existed to issue the warrant, we first address the state's claim that the defendant was not entitled to challenge the search of the Mazda.[4] The state, contending that the defendant did not own the Mazda, maintains that he

---

[4] The state did not raise in the trial court, and thus the trial court did not address, the issue of whether the defendant was entitled to challenge the validity of the warrant. For the purposes of the motion to suppress, the trial court proceeded immediately to the issue of whether the warrant was valid on its "four corners." Thus, the state has raised the claim of a lack of reasonable expectation of privacy for the first time in this court. Because we conclude that the defendant was entitled to challenge the validity of the warrant, we need not decide whether the state waived this claim.

consequently had no "legitimate expectation of privacy" in its contents, and thus could not challenge its search.[5]

To receive fourth amendment protection against unreasonable searches and seizures, a defendant must have a legitimate expectation of privacy in the invaded area. *Katz* v. *United States,* 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring); *State* v. *Mooney,* 218 Conn. 85, 94, 588 A.2d 145, cert. denied, U.S. , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). "Absent such an expectation, the subsequent police action has no constitutional ramifications." *State* v. *Brown,* 198 Conn. 348, 355, 503 A.2d 566 (1986). The determination of whether the defendant had a reasonable expectation of privacy in the area searched requires a two part factual inquiry: first, whether the defendant has exhibited an actual subjective expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable. *State* v. *Mooney,* supra.

In the present case, the record establishes that the defendant exhibited a subjective expectation of privacy in the Mazda. The warrant affidavit stated that the

_____

[5] The state predicates its claim of a lack of ownership of the vehicle on the antecedent claim that the defendant lacked legal title to the vehicle. This claim is, in turn, based on the following statement in the warrant affidavit: "[T]he undersigned then accessed records of the Department of Motor Vehicles and found that the last known owner of said vehicle resided in Newington, Connecticut and that the vehicle was listed as a 1979 Mazda RX7 color brown. That the transfer date of said vehicle was noted as April 14, 1988, the time at which the last known owner relinquished ownership." The lack of department of motor vehicle records, however, does not conclusively establish lack of ownership. An owner of a motor vehicle is "any person holding title to a motor vehicle, or having the legal right to register the same, including purchasers under conditional bills of sale." General Statutes § 14-1 (a) (56). Furthermore, it stands to reason that an unregistered automobile may be owned by someone, despite the lack of formal documentation of ownership.

defendant had claimed ownership of the Mazda, that the vehicle was parked in front of his residence when the police came to interview him, that the defendant knew the vehicle was not currently operable, and that he had joked that he would pay the police officers $100 to repair the vehicle. Thus, the defendant exhibited a significant degree of possession of and control over the automobile. Under these circumstances, the defendant exhibited the necessary subjective expectation of privacy.

Whether the defendant "possessed a reasonable expectation of privacy in the automobile requires a factual inquiry into all the relevant circumstances surrounding its [search]." *State* v. *Pittman,* 209 Conn. 596, 601, 553 A.2d 155 (1989). This court has held repeatedly that the owner of an automobile may challenge a police search of its contents. *State* v. *Altrui,* 188 Conn. 161, 178–79, 448 A.2d 837 (1982); *State* v. *Darwin,* 161 Conn. 413, 419–20, 288 A.2d 422 (1971). Even individuals who do not legally own an automobile may be entitled to challenge its search. See *State* v. *Darwin,* supra, 420 (husband may challenge search of wife's car); see also *United States* v. *Garcia,* 897 F.2d 1413, 1418 (7th Cir. 1990) ("[i]f an individual has the owner's permission to use [the automobile], society surely recognizes this [expectation of privacy] as reasonable"); compare *State* v. *Pittman,* supra, 601–602 (husband not entitled to challenge search of car of murdered wife because he had surrendered possession, keys and access to vehicle).

In the present case, the warrant affidavit stated that the defendant had told the police that he owned the unregistered Mazda. The officers relied on that statement to support their application for a warrant. Furthermore, the state has not established that the defendant did not own the Mazda. As previously noted, the vehicle was parked in front of the defendant's resi-

dence, and the defendant's statements regarding its condition and need for repair provided additional indicia of ownership. Given these facts, we cannot conclude that the defendant was not the owner of the vehicle. Under these circumstances, we conclude that the defendant's ownership of the Mazda rendered his expectation of privacy therein reasonable. *United States v. Rubio-Rivera,* 917 F.2d 1271, 1275 (10th Cir. 1990) (defendant not required to show documentary proof of ownership or lawful custody of the vehicle); *United States v. Arango,* 912 F.2d 441, 446 n.2 (10th Cir. 1990) (same).

## B

We next consider the validity of the search warrant. In the present case, the necessary inquiry is whether there was probable cause to believe that the defendant had shot the victims and that evidence of the crime would be found in the place to be searched. The determination of whether probable cause exists to issue a search warrant under article first, § 7 of our state constitution,[6] and under the fourth amendment to the federal constitution,[7] is made pursuant to a "totality of the circumstances" test. *State v. Barton,* 219 Conn. 529, 544, 594 A.2d 917 (1991); *Illinois v. Gates,* 462 U.S. 213, 231–32 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Under this test, in determining the exis-

---

[6] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[7] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

tence of probable cause to search, the issuing judge must make a "practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State* v. *Johnson,* 219 Conn. 557, 563, 594 A.2d 933 (1991).

If a search warrant affidavit is based on information provided to the police by a confidential informant, the issuing judge "should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate." *State* v. *Barton,* supra, 544–45.

In the present case, the defendant claims that the absence of specific references to the informants' reliability or bases of knowledge in the affidavit established only "mere suspicion" rather than the constitutional requirement of probable cause. Under the "totality of the circumstances" analysis set forth in *State* v. *Bar-*

*ton,* supra, and *Illinois* v. *Gates,* supra, however, we conclude that the affidavit established probable cause.

Initially, we disagree with the defendant's contention that the affidavit made no reference to the informants' reliability. The affidavit stated that the informants who had given information to the police regarding the threats made by the defendant toward Rivera had also given information in prior cases that had led to arrests and convictions. If an informant has a track record of providing reliable information, the issuing judge may credit the information given in the present case. *State* v. *Morrill,* 205 Conn. 560, 567, 534 A.2d 1165 (1987); *State* v. *Romano,* 165 Conn. 239, 244, 332 A.2d 64 (1973); see also 1 W. LaFave, Search and Seizure (1987) § 3.3 (b) (to establish informant's reliability affiant need not detail specific instances in which informant provided reliable information). Thus, the issuing judge in the present case reasonably could have concluded that the information regarding the defendant's rivalry with Rivera was reliable.

Furthermore, statements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police. *State* v. *Ruscoe,* 212 Conn. 223, 230–31, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Ross,* 194 Conn. 447, 465–66, 481 A.2d 730 (1984); *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984); *State* v. *Daley,* 189 Conn. 717, 721–24, 458 A.2d 1147 (1983); *State* v. *Just,* 185 Conn. 339, 361, 441 A.2d 98 (1981); see *Illinois* v. *Gates,* supra, 242–43; *Jones* v. *United States,* 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960); *United States* v. *Canestri,* 518 F.2d 269, 272 (2d Cir. 1975). " 'If the police have evidence (such as from prior independent police work), which corroborates some of the details included in the affidavit, then an inference of

reliability will rise. . . .' " *State* v. *Just,* supra, 361; *Spinelli* v. *United States,* 393 U.S. 410, 417-18, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). In the present case, the information received from the informants regarding the rivalry between the defendant and Rivera had been substantially corroborated by the West Haven police department's investigation of the 1988 shooting of the defendant and the resulting arrest warrant for Rivera. This corroborating evidence supported the reliability of the informants' statements that the defendant had made overt threats toward Rivera regarding retribution for the prior assault.

Additionally, the police "were able to develop information regarding Rodriguez whereby he was observed to be in possession of a large caliber revolver, within 4 hours prior to the commission of these homicides." Although the affidavit did not provide the particular source of this information, or the name of the informant from which it came, this statement was substantially corroborated by the police officers who observed large caliber ammunition in plain view on the floor of the Mazda, and by forensic evidence that the murders were committed with a large caliber handgun. Under these circumstances, the issuing judge was entitled to give the information linking the defendant to such a gun four hours prior to the murders some credibility.

In sum, the informants' statements, as corroborated by the track record of the informants and by other extrinsic evidence, provided a substantial basis for the issuing judge to conclude that such information was reliable. Therefore, under the "totality of the circumstances" test enunciated in *State* v. *Barton,* supra, and *Illinois* v. *Gates,* supra, we conclude that the issuing judge had probable cause to believe that the defendant had shot the victims and that the Mazda contained evidence related to the murders.

## II

The defendant next claims that the trial court improperly denied his motion to suppress the evidence seized pursuant to a search warrant for a Datsun station wagon. The defendant contends that probable cause did not exist to issue the warrant because the affidavit supporting the warrant did not adequately set forth the police informant's basis of knowledge or reliability.

The following facts are relevant to this claim. West Haven police officers presented to a judge of the Superior Court a warrant application, dated May 8, 1989, to seize a brown 1981 Datsun station wagon that was located in the rear yard of a used car lot in New Haven. After setting forth the relevant background to the murders and the police investigation, the affidavit stated that two eyewitnesses to the shooting had "observed apparent muzzle flashes as a firearm was being discharged out of the passenger side of a motor vehicle which [was] travelling in the same direction [as] the [victim's car] on its left hand side." The affidavit stated that the witnesses had described the vehicle "as being small in size, with a hatchback type rear window, and the vehicle's body color to be tan."

The affidavit regarding the Datsun recounted the rivalry between the defendant and Rivera that had culminated in the shooting of the defendant and the subsequent arrest warrant for Rivera. The affidavit also recounted the defendant's possession of a large caliber handgun four hours prior to the murders and the forensic evidence demonstrating that the victims had been shot with a large caliber handgun. The affidavit then stated that the defendant had been arrested on two counts of murder on March 8, 1989, in connection with the shooting of Rivera and Gilberto Rodriguez, and that a trial date had been set.

Finally, the affidavit contained the following passage: "That on May 8, 1989 a Hector Estrada of 29 Greenwood Street, New Haven, did contact this Police Department and advised that the car Angel Rodriguez, Jr., used in the homicide was presently in the rear yard of Cestaro & Sons, Inc. Used Car Lot at 477 Ferry Street, New Haven. That upon receiving this information the above mentioned officers did go to Cestaro & Sons, Inc., 477 Ferry Street, New Haven. That upon checking rear lot we did observe a 1981 Datsun Station Wagon color brown. That upon speaking with the owner, Pasquale Cestaro, about this car he advised that Angel[8] dropped it off some time ago. Upon speaking to another employee he stated that Angel dropped off car about nine to ten weeks ago. That [upon] closer examination of this vehicle it does fit the description of several of the witnesses that we have interviewed."

A

The defendant contends that the absence in the affidavit of specific references to the informant's reliability or basis of knowledge establishes only "mere suspicion" rather than the constitutional requirement of probable cause.[9] We conclude, however, that the affidavit established probable cause.

---

[8] The record reveals that, in fact, it was Angel Rodriguez, Sr., the defendant's father, and not the defendant, who had left the Datsun at Cestaro and Sons. The defendant did not raise this discrepancy in the warrant before the trial court as part of his challenge to the sufficiency of the warrant to search the Datsun or as part of his claim for a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The defendant's brief raises this factual issue only to establish that there was a sufficient connection between the defendant and the Datsun to have entitled him to challenge its search.

[9] The trial court denied the defendant's motion to suppress on the ground that the defendant did not have a reasonable expectation of privacy in the Datsun. We assume, without deciding, that the defendant had an expectation of privacy in the Datsun sufficient to entitle him to challenge the search.

We first note that the affidavit established probable cause to believe that the defendant had committed the murders. The warrant affidavit plainly stated that, at a hearing held pursuant to General Statutes § 54-46a,[10] a Superior Court judge had determined that there was probable cause to believe that the defendant had committed the murders. From this prior probable cause determination, combined with other evidence in the warrant that established the defendant's motive and that factually linked the defendant to the murders, the issuing judge had probable cause to believe that the defendant had shot the victims. Thus, the primary question for the issuing judge to determine was whether the affidavit supporting the warrant established probable cause to believe that the 1981 Datsun contained evidence related to the murders or had been used in the commission of the offense. We conclude that the affidavit adequately established probable cause.

First, the warrant affidavit contained a statement by Hector Estrada that the vehicle that had been used during the homicides was parked in a used car lot. Although the affidavit did not set forth Estrada's particular basis of knowledge or reliability, his information was corroborated by the fact that the police found the brown 1981 Datsun at Cestaro and Sons. The issuing judge, therefore, was entitled to conclude that Estrada was a reliable informant. *State* v. *Ruscoe,* supra, 230–31. Additionally, from these facts, the magistrate reasonably could have inferred that Estrada had given the police a physical description of the vehi-

---

[10] General Statutes § 54-46a provides in pertinent part: "PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state . . . shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. . . ."

cle and, thus, the magistrate reasonably could have found an additional indicia of the reliability of Estrada's information. *State* v. *Barton,* supra, 544–45 ("a court reviewing that warrant . . . should defer to the reasonable inferences drawn by the magistrate"). Although Estrada's basis of knowledge was not clear from the face of the affidavit, a deficiency in the "basis of knowledge" prong may be overcome by a strong showing of the informant's reliability. *Illinois* v. *Gates,* supra, 233.

Second, the warrant also stated that two eyewitnesses to the shootings had described the vehicle as "small in size, with a hatchback type rear window, and the vehicle's body color to be tan." Although the names of these witnesses were not set forth in the affidavit, the issuing judge reasonably could have concluded that the two parties were citizen informants rather than unnamed police informants because the context of the affidavit indicates that they were operating their vehicle on the same street and at the same time as the shooting. Thus, the police were not obligated to make an additional showing as to the reliability of those witnesses. *State* v. *Daley,* supra, 724.[11] Furthermore, because the information was received from witnesses who had personally observed the murders, the issuing judge was entitled to conclude that such statements were entitled to greater reliability. *Illinois* v. *Gates,* supra, 232–34. Additionally, the description given by the two eyewitnesses substantially conformed to the actual physical characteristics of the Datsun named in the warrant. The issuing judge reasonably could have

---

[11] An additional demonstration of a citizen informant's reliability is not necessary because such individuals do not expect any gain or concession in exchange for the information they give to the police. Additionally, citizen informers usually do not supply information to the police more than once, thereby precluding proof of past instances of reliability. See 1 W. LaFave, Search and Seizure (1987) § 3.4 (a).

concluded that the two eyewitnesses' statements warranted independent weight and were corroborative of Hector Estrada's statements.

Finally, the affidavit stated that both the owner and an employee of Cestaro and Sons had told the police that "Angel" had left the car at his lot. This information directly linked the defendant to the vehicle, and was entitled to substantial credence because both individuals were citizen informants. *State* v. *Daley,* supra. The issuing judge reasonably could have inferred that the vehicle was owned by the defendant, and because there was probable cause to believe that the defendant had committed the drive-by shooting, it was also likely that he had used his own automobile to commit the offense. Additionally, the employee stated that "Angel" had left the car nine to ten weeks prior to May 8, 1989, that is, within approximately one or two weeks after the murders. From this information, the issuing judge reasonably could have inferred that the defendant had attempted to secrete the vehicle approximately one or two weeks after the murders, and that the vehicle had been used in the shootings. Considering all the information presented in the affidavit, therefore, under the totality of the circumstances, the issuing judge had probable cause to believe that the 1981 Datsun had been used in the commission of the murders.

### B

The defendant next claims that even if probable cause existed within the "four corners" of the warrant, the trial court improperly denied the defendant's motion for a hearing pursuant to *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), because the warrant affidavit contained a material misstatement and two material omissions. We disagree.

In *Franks* v. *Delaware,* supra, 155–56, the United States Supreme Court held that if a defendant makes

a "substantial preliminary showing that a false state-
ment knowingly and intentionally, or with reckless dis-
regard for the truth, was included by the affiant in the
warrant affidavit, and if the allegedly false statement
is necessary to the finding of probable cause, the Fourth
Amendment requires that a hearing be held at the
defendant's request." See also *State* v. *Weinberg,* 215
Conn. 231, 237, 575 A.2d 1003, cert. denied, 498 U.S.
967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State*
v. *Bergin,* 214 Conn. 657, 666, 574 A.2d 164 (1990);
*State* v. *Ruscoe,* supra, 232. Cases subsequent to *Franks*
have extended the rule to include material omissions
from the affidavit. See *State* v. *Weinberg,* supra; *State*
v. *Bergin,* supra. As the United States Supreme Court
noted in *Franks,* "[t]here is, of course, a presumption
of validity with respect to the affidavit supporting the
search warrant. To mandate an evidentiary hearing,
the challenger's attack must be more than conclusory
. . . . There must be allegations of deliberate false-
hood or of reckless disregard for the truth, and those
allegations must be accompanied by an offer of proof."
*Franks* v. *Delaware,* supra, 171.

In the present case, the defendant first claims that
the affidavit supporting the warrant for the Datsun con-
tained a material misstatement. The defendant con-
tends that the paragraph in the affidavit that set forth
the information provided by Hector Estrada necessarily
misled the issuing judge into believing that Hector
Estrada had personally witnessed the homicides. We
discern, however, no language in this paragraph that
constitutes such a misstatement. The language of the
affidavit simply stated that Estrada had "advised" the
police that the car the defendant had used in commit-
ting the homicides could be found at Cestaro and Sons.
Nowhere in the paragraph do the affiants state that

Estrada had witnessed the homicides.[12] Indeed, the issuing judge reasonably could have inferred that Estrada had not witnessed the shootings because the officers would have been likely to include such information in the affidavit to support a showing of Estrada's basis of knowledge.

The defendant also claims that the affidavit omitted material information provided to the police by a witness who had observed a vehicle leaving the scene of the shooting. In his statement to the police, this witness testified that he was lying on his couch in his apartment on Spring Street when he heard shots. As he was getting up from the couch to look out the window, he heard "a car speeding away." He stated that when he reached the window, he saw a brown Ford LTD alongside the victims' vehicle.

As we noted in *State* v. *Bergin,* supra, 666, not all omissions, even if intentional, give rise to the right to a *Franks* hearing. Accordingly, "an affiant may omit facts that he believes to be either immaterial or unsubstantiated." Id. Thus, we have held that, in order to be entitled to a *Franks* hearing, a defendant must make a "substantial preliminary showing that the information was (1) omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge, and (2) material to the determination of probable cause." Id., 666–67; see also *United States* v. *Colkley,* 899 F.2d 297, 301 (4th Cir. 1990). The affiants reasonably could have believed that

---

[12] In connection with this claim, the defendant contends that information provided to the authorities by Hector Estrada led the West Haven police to procure a warrant to search a yellow 1978 Datsun, and that the affidavit supporting the warrant application to search the 1981 Datsun failed to disclose the issuance of the prior warrant. We have never held, however, that probable cause to search one place defeats probable cause to search another. See *State* v. *Couture,* 194 Conn. 530, 540–44, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

the statement of the witness was immaterial or unsubstantiated because, by the time the witness looked out the window, he had already heard a vehicle speed away, and therefore had not seen the vehicle from which the shots were fired. Thus, the affiants' failure to include in the affidavit this statement of questionable reliability cannot be characterized as having been either a deliberate attempt to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing magistrate. See *United States* v. *Colkley*, supra (trial court could not have inferred intent or recklessness from the omission itself; such inferences warranted only if omitted material clearly is critical to finding of probable cause).

Finally, the defendant claims that the affiants materially omitted an eyewitness report from three children playing basketball near the scene of the murders. The children told police officers at the scene that they had heard shots and then had run out to the street to see what had happened. The children claimed that they had seen a white 260z or 280z Datsun next to the victims' vehicle. Again, the affiants reasonably could have believed that the children arrived too late to view the vehicle from which the shots had been fired, and thus it was not necessary to include their statement in the affidavit. We also cannot characterize this omission as either a deliberate attempt to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing magistrate. We conclude, therefore, that the trial court properly denied the defendant's motion for a *Franks* hearing.

### III

The defendant's final claim is that the trial court improperly instructed the jury on a statutory alternative for a conviction for which there was no supporting evidence. We disagree.

The following facts are relevant to this claim. At trial, the state introduced substantial evidence establishing the defendant's motive and intent to kill Rivera. Numerous witnesses and forensic evidence established that at least four shots were fired at both victims from close range. The jury heard testimony from the defendant's girlfriend and from a jailhouse informant from which it reasonably could have inferred that the defendant had shot Gilberto Rodriguez in order to prevent Rodriguez from testifying to the shooting of Rivera. The defendant also told the jailhouse informant that one of the bullets passed through the head of Rivera and struck Gilberto Rodriguez.

The court instructed the jury that to convict the defendant of murder the state must prove beyond a reasonable doubt that "the person causing the death of another person must have done so with the intent to cause death. Either that of the victim or of a third person. In other words, if 'A' intending to cause the death of 'B,' for instance, and by way of an example, should put an explosive [device] in 'B's' car and 'C' is killed as a result, then the defendant is still guilty of murder." The defendant excepted to this instruction.

The defendant claims that this instruction was improper because there was no evidence sufficient to establish guilt under each statutory alternative. In reviewing a sufficiency of the evidence claim, the dispositive question is whether, viewing the evidence in the light most favorable to sustaining the verdict, the trier of fact reasonably could have concluded, from the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Montanez,* 219 Conn. 16, 19, 592 A.2d 149 (1991). We also have held that if " 'a person may have been convicted under more than one statutory alter-

native, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon.' " *State* v. *Williams,* 202 Conn. 349, 363, 541 A.2d 150 (1987); *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); *State* v. *Asherman,* 193 Conn. 695, 730, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983).[13]

In the present case, the defendant contends that for the charge to have been proper the state was required to introduce evidence tending to establish that: (1) with the intent to cause the death of Hector Rivera, the defendant had caused the death of Gilberto Rodriguez; and (2) with the intent to cause the death of Gilberto Rodriguez, the defendant caused the death of Hector Rivera. Upon full review of the record, we find that the state met this burden.

The jury reasonably could have inferred that the defendant had the requisite intent to kill both Rivera and Gilberto Rodriguez. The jury heard extensive testimony recounting Hector Rivera's prior shooting of the defendant and their ongoing rivalry. The jury also heard testimony from the defendant's girlfriend and a jailhouse informant from which it could have inferred that the defendant had shot Rodriguez because he had been a witness to the shooting. The jury also reasonably could have found that, given the close proximity of the defendant and the victims during the shooting,

---

[13] The instruction at issue in each of the cases cited above involved different subsections of the particular statute upon which the judge based the instruction. In the present case, we assume, without deciding, that the statutory alternative analysis set forth in *State* v. *Williams,* 202 Conn. 349, 363–64, 541 A.2d 150 (1987), applies to alternative language occurring within the same statutory subsection. See, e.g., *State* v. *Reyes,* 19 Conn. App. 179, 191, 562 A.2d 27 (1989).

the angle at which the defendant fired the shots and the number of shots fired, in the defendant's attempt to shoot Rivera a bullet also struck Gilberto Rodriguez. Similarly, the jury reasonably could have found that in the defendant's attempt to shoot Gilberto Rodriguez a bullet also struck Hector Rivera. Thus, there was sufficient evidence to convict the defendant on both of the statutory alternatives. Because sufficient evidence was introduced for each statutory alternative, the jury charge was proper.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and GLASS, Js., concurred.

BERDON, J., dissenting in part and concurring in part. This case demonstrates how the adoption in *State* v. *Barton,* 219 Conn. 519, 594 A.2d 917 (1991), of the "totality of the circumstances" standard of *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983), has undermined the safeguards of the search and seizure clause in our state constitution. Conn. Const., art. I, § 7; see also *State* v. *Santiago,* 223 Conn. 906, 610 A.2d 179 (1992) (*Berdon, J.,* dissenting from denial of certification). Indeed, the right to be secure from unreasonable searches and seizures disappears when the majority superimposes on *Barton* its "reasonable inference" rule, which amounts to the supplying of vital information by inference to support probable cause in an affidavit where, in fact, the underlying facts upon which the claimed inferences rest are mere shadows in the dark. The combination of these two standards—the totality of the circumstances and the unwarranted inference—spells disaster for the constitutional protection against warrants issued without probable cause.

The majority in part II of its opinion holds that, on the basis of information supplied by a Hector Estrada, there was sufficient probable cause for the issuing magistrate to believe that the defendant's 1981 Datsun had been used in the crime and, therefore, to issue the search warrant for the car. There was, however, no indication of who Estrada was, or equally important, his basis of knowledge that the Datsun was the car the defendant had used in the homicide. The majority compensates for this gaping hole in the warrant application by highlighting that the supporting affidavit stated that "two eyewitnesses" to the shooting had "observed apparent muzzle flashes" from a car similar to that of the defendant's Datsun. Then, apparently to compensate for the complete lack of information in the affidavit about the "two eyewitnesses," the majority concludes that the magistrate could have inferred "that the two parties were citizen informants rather than unnamed police informants because the context of the affidavit indicates that they were operating their vehicle on the same street and at the same time as the shooting." I was not aware that "unnamed police informants" are incapable of "operating their vehicle[s] on the same street and at the same time as [a] shooting." What the majority is doing, in effect, is rewriting the affidavit to add supporting facts not contained therein.

Even under *Illinois* v. *Gates,* the affidavit in this case could not pass constitutional muster. As the majority of this court acknowledged in *Barton,* the United States Supreme Court did not entirely abandon the "two pronged" *Aguilar-Spinelli*[1] test—that is, the informant's "veracity" or "reliability" and his or her "basis of knowledge." The majority in *Barton,* recognized that

[1] *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

"[i]n *Gates,* the Supreme Court reaffirmed that the 'veracity' or 'reliability' and the 'basis of knowledge' inquiries formulated in *Aguilar* remain 'highly relevant' in the determination of probable cause and should be regarded as 'closely intertwined issues that may usefully illuminate the common-sense, practical question' of the existence of probable cause to believe that contraband or evidence is located in a particular place. *Illinois* v. *Gates,* supra, 230. The *Gates* court abandoned only a 'rigid compartmentalization' of the inquiries and denied that the court had ever intended them to be understood as 'entirely separate and independent requirements to be rigidly exacted in every case.' Id." *State* v. *Barton,* supra, 537. Accordingly, there must exist some information upon which the informant based his knowledge, otherwise the magistrate surrenders his responsibilities to the police officer's determination.

In the present case, although the majority claims that Estrada's "basis of knowledge was not clear," the fact is, the basis of his knowledge was nonexistent. *State* v. *Cofield,* 220 Conn. 38, 46, 595 A.2d 1349 (1991) (the court "made clear in *Barton* that the informant's 'veracity,' 'reliability,' and 'basis of knowledge' remain 'highly relevant' "). Indeed, there is nothing in *Gates* that would support a finding of probable cause when the affidavit fails to supply any evidence as to the basis of the informant's knowledge. *Illinois* v. *Gates,* supra, 233.

It is important to remember what Justice Brennan wrote in his dissent in *Gates.* "Everyone shares the Court's concern over the horrors of [crime], but under our Constitution only measures consistent with the Fourth Amendment may be employed by government to cure this evil. We must be ever mindful of Justice Stewart's admonition in *Coolidge* v. *New Hampshire,* 403 U.S. 443, [445, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)]: In times of unrest, whether caused by crime

or racial conflict or fear of internal subversion, this basic law and the values that it represents may appear unrealistic or extravagant to some. But the values were those of the authors of our fundamental constitutional concepts. . . . In the same vein, *Glasser* v. *United States,* 315 U.S. 60, [86, 62 S. Ct. 457, 86 L. Ed. 680 (1942)], warned that [s]teps innocently taken may, one by one, lead to the irretrievable impairment of substantial liberties. . . .

"Rights secured by the Fourth Amendment are particularly difficult to protect because their advocates are usually criminals. *Draper* v. *United States,* [358 U.S. 307, 314, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959)] (Douglas, J., dissenting). But the rules we fashion [are] for the innocent and guilty alike. Ibid. See also *Kolender* v. *Lawson,* [461 U.S. 352, 362 n.1, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)] (Brennan, J., concurring); *Brinegar* v. *United States,* [338 U.S. 160, 181, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)] (Jackson, J., dissenting). By replacing *Aguilar* and *Spinelli* with a test that provides no assurance that [the] magistrates, rather than the police, or informants, will make determinations of probable cause; imposes no structure on magistrates' probable-cause inquiries; and invites the possibility that intrusions may be justified on less than reliable information from an honest or credible person, today's decision threatens to obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law. *Johnson* v. *United States,* [333 U.S. 10, 17, 68 S. Ct. 367, 92 L. Ed. 436 (1948)]." (Internal quotation marks omitted.) *Illinois* v. *Gates,* supra, 290–91.

Instead of requiring the magistrate, the protector of our constitutional right to privacy, to determine whether probable cause exists to issue the warrant, we grant him or her the authority merely to rubber stamp

the decision of the police. It is alarming to think that the police can make the ultimate determination of when our right to privacy ends. Now, if probable cause is not found by the totality of the circumstances standard, it will be supplied by creating unfounded inferences.

I dissent as to part II, which finds there was probable cause as to the search warrant for the Datsun; accordingly, I would reverse the defendant's conviction and remand the case for a new trial. I concur only in the result in part I and concur in part III.