## STATE OF CONNECTICUT *v.* GABRIEL R. DIMECO III (AC 32202)

DiPentima, C. J., and Robinson and Bear, Js.

Argued February 8—officially released April 26, 2011

*Joseph M. Merly*, with whom, on the brief, were *John R. Williams* and *Robert A. Serafinowicz*, for the appellant (defendant).

*Nancy L. Chupak,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* former state's attorney, and *Terence D. Mariani,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Gabriel R. DiMeco III, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere pursuant to General Statutes § 54-94a,[1] of one count of possession of child pornography in the first degree in violation of General Statutes (Rev. to 2009) § 53a-196d.[2] On appeal, the defendant claims that the court improperly denied his motion to suppress the data and images found on his computer, which were seized pursuant to a search warrant. The defendant contends that the warrant was issued without probable cause. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On November 30, 2007, Wolcott police Officer Patrick Malloy filed an affidavit in support of a search and seizure warrant application regarding

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] General Statutes (Rev. to 2009) § 53a-196d provides: "(a) A person is guilty of possessing child pornography in the first degree when such person knowingly possesses fifty or more visual depictions of child pornography.

"(b) Possessing child pornography in the first degree is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

the defendant. In the affidavit, Malloy averred to the following relevant information: "On [November 27, 2007] . . . [a]ffiant Malloy met with Vanessa Olivero . . . [and she] produced [a] notebook she had taken from [the defendant's] residence and explained in a sworn written statement that approximately [two] or [three] weeks ago she was at the [defendant's] residence visiting her sister [Erica Olivero] and was looking for a piece of paper. [Vanessa] Olivero had gone into [the defendant's] bedroom and retrieved a [four inch by six inch] spiral pad that had been on the desk next to his computer. As [Vanessa] Olivero looked through the pad she noticed web sites that alarmed her, the sites appeared to be linked to child pornography. [Vanessa] Olivero then told her sister Erica [Olivero] who is [the defendant's] girlfriend and she appeared to be shocked. Erica [Olivero] confronted [the defendant] when he returned from work and he then threw the notebook into the garbage. [Erica] Olivero then removed the notebook from the garbage and gave it to her mother . . . for safe keeping. . . .

"Approximately [one] week later [Vanessa] Olivero was again at the [defendant's] residence when a man came to the door and was talking about [the defendant's] computer. Erica [Olivero] later confronted [the defendant] and he told her that his computer was broken and that he needed a new one. Later on that same day, [Vanessa] Olivero went into the bedroom again to use the full length mirror, as she was adjusting the mirror she observed a computer hard drive hidden behind it. [Vanessa] Olivero brought the hard drive to Erica [Olivero] and she hid it somewhere in her children's room. . . .

"[Vanessa] Olivero also stated that she is concerned for the safety of Erica [Olivero's] children and felt quite certain that the web sites in the notebook were for child pornography. The notebook was then logged as

evidence and stored at the Wolcott [p]olice [d]epartment. . . .

"On [November 29, 2007] . . . [a]ffiant Malloy met with Detective Ronald Blanchard of the Naugatuck [p]olice [d]epartment. Detective Blanchard heads the computer crimes division of the Naugatuck [p]olice [d]epartment and offered to help in the reviewing of the notebook that [Vanessa] Olivero provided me. While reviewing the notebook, it contained many web addresses that suggested child pornography. Many of these sites required special passwords that Detective Blanchard and I could not decipher. Detective Blanchard was able to access a site . . . which showed nude images/pictures of females [who] appeared to be preteen. Another site . . . also showed nude images/photos of what appeared to be preteen females. Detective Blanchard and I also accessed another site . . . which was an autobiography of a man with [seven] daughters who claimed to be having sex with all of them who were as young as [five] years old. . . .[3]

"Based on the [affiant's] training and experience, it is known that pedophiles and sexual predators of children, take, collect and keep their photographs of children and consider them their [trophies] which they store on computer systems and other electronic storage media, [compact disks], floppy disks, which these photographs are traded and sold to other persons with similar likes. Therefore probable cause does exist to believe that these items will be found at the [defendant's] residence . . . ."

On the basis of this affidavit, a search and seizure warrant was issued, permitting the police to enter into and search the defendant's residence for personal property, including computer related equipment, electronic

---

[3] In the interest of protecting the victims of child pornography, we intentionally have omitted the names of these websites.

equipment and media storage devices. On November 30, 2007, the police searched the defendant's residence and seized many items, including a Gateway laptop computer, five hard drives, disposable cameras, compact disks, diskettes, [eight millimeter] videocassettes and video cameras.

Subsequently, the defendant was arrested and charged with one count of possession of child pornography in the first degree, to which he entered a plea of not guilty. On July 8, 2009, the defendant filed a revised motion to suppress the items seized on November 30, 2007, on the ground that the search and seizure warrant was issued without probable cause in violation of his federal and state constitutional rights. On September 21, 2009, the court, *Damiani, J.*, denied the motion, and the defendant, on December 18, 2009, entered a conditional plea of nolo contendere, which was accepted by the court. The defendant was sentenced to fifteen years imprisonment, execution suspended after the mandatory five year term, with ten years probation. This appeal followed.

The defendant's sole claim on appeal is that the court improperly denied his motion to suppress. Initially, we set forth our standard of review. "The standard of review in connection with the court's denial of a motion to suppress is well settled. . . . [It] involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding

whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Internal quotation marks omitted.) *State* v. *Shields*, 124 Conn. App. 584, 590–91, 5 A.3d 984 (2010), cert. granted on other grounds, 299 Conn. 927, 12 A.3d 571 (2011). On appeal, the defendant does not challenge any of the court's factual findings. Rather, he challenges only the court's legal conclusion. Accordingly, our review of this claim is plenary. Id., 591.

The defendant claims that the court improperly denied his motion to suppress the evidence seized because the warrant was issued without probable cause. He argues that the affidavit supporting the warrant contained "chiefly hearsay (as Judge Damiani observed), conclusory assertions, and speculation." He contends that the names of the websites contained in his notebook and the photographs that were observed when the police viewed these websites provided the "only actual evidence set out in the affidavit" supporting the warrant application. He further argues that this evidence did not support a finding of probable cause because the affiant merely set forth a conclusory statement that the photographs "appeared to be preteen females" and the website addresses "do not necessarily suggest that the persons depicted would be under the requisite age." Furthermore, he argues, the third website "did not contain any pornography at all." In conclusion, the defendant argues that "[t]here is, in short, a striking lack of substance in the affidavit and not enough factual material to reach the level of probable cause." We conclude that there was probable cause to support the issuance of the search warrant.

"The law regarding probable cause and the standards for upholding the issuance of a search warrant are well established. We uphold the validity of [a search] warrant

. . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . [T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Whe[n] the circumstances for finding probable cause are detailed, whe[n] a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." (Internal quotation marks omitted.) *State* v. *Lasaga*, 269 Conn. 454, 469, 848 A.2d 1149 (2004).

Our determination of whether an affidavit sufficiently establishes probable cause is governed by the "totality of the circumstances" test enunciated in *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991). That test requires the judge issuing the warrant to make "a practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 223 Conn. 127, 135, 613 A.2d 211 (1992).[4]

---

[4] A determination of probable cause can be based on hearsay statements: "Probable cause is determined by objectively considering what is known to the state at the time a warrant is presented to a magistrate; it does not require the accuracy presented by hindsight. Inherent in the concept of probable cause is that the factual basis of a warrant may be inaccurate. The factual basis for probable cause should be truthful in the sense that the information put forth is to be believed or appropriately accepted by the affiant as true. . . . [It] does not mean truthful in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as

We conclude that the court reasonably could have concluded that the warrant affidavit contained sufficient facts to establish probable cause that the defendant's residence contained child pornography. Malloy stated in his affidavit that Vanessa Olivero was the sister of the defendant's girlfriend. She went to the police because she was worried about her sister's children. Vanessa Olivero had given Malloy a notebook that she had found on the defendant's desk near his computer, which was located in his bedroom. This notebook contained the addresses of several websites that, from their names, appeared to her to contain child pornography. Vanessa Olivero also was concerned because after her sister confronted the defendant with the notebook, he threw it into the garbage. He later said that his computer was broken, and Vanessa Olivero found a hard drive seemingly hidden behind the mirror in the defendant's bedroom. Vanessa Olivero signed a sworn statement attesting to the truth of her allegations.

The court reasonably could have concluded that the defendant's notebook confirmed the information given by Vanessa Olivero. "[S]tatements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police." *State* v. *Rodriguez*, supra, 223 Conn. 136. "The theory of corroboration is that a statement which has been shown true in some respects is reasonably likely to be true in the remaining respects." *State* v. *Jackson*, 162 Conn. 440, 447, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). As reasonably could have been determined by the court, Vanessa Olivero's statements, as corroborated by the notebook, provided

well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." (Citation omitted; internal quotation marks omitted.) *State* v. *Glenn*, 251 Conn. 567, 576, 740 A.2d 856 (1999). In the present case, although the defendant complains that the warrant affidavit contained hearsay statements, he does not argue that those statements were inaccurate or untruthful.

a substantial basis for the judge issuing the warrant to conclude that her statements were reliable.

Furthermore, although the defendant argues that the notebook contained rather innocuous web addresses, we conclude that the trial court reasonably could have found that they appeared to suggest child pornography. Malloy, who attested that he had training and experience in matters concerning pedophiles and sexual predators of children, opined that the photographs he was able to view on some of the websites listed in the defendant's notebook were of females who appeared to be preteen in age. Although the defendant argues that this opinion was conclusory because Malloy failed to state the basis for his opinion, we conclude that because of his training and experience in matters concerning pedophiles and sexual predators of children, the trial court was entitled to credit Malloy's opinion when making its determination of probable cause.

On the basis of the statements contained in the search warrant affidavit, we conclude the trial court reasonably could have determined that the warrant affidavit contained sufficient facts to establish probable cause that the defendant's residence contained child pornography and that a search and seizure warrant should issue. Accordingly, the trial court properly denied the defendant's motion to suppress the evidence obtained as a result of the execution of that warrant.

The judgment is affirmed.

In this opinion the other judges concurred.