******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JUBAR T. HOLLEY
(SC 19662)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

*Argued October 21—officially released December 28, 2016\**

*William A. Adsit*, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Jennifer F. Miller*, deputy assistant state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The defendant, Jubar T. Holley, appeals from the judgment of conviction rendered by the trial court following his pleas of nolo contendere; see General Statutes § 54-94a;[1] to four counts of criminal possession of a firearm in violation of General Statutes (Rev. to 2013) § 53a-217 (a).[2] The defendant entered these pleas after the trial court's denial of his motion to suppress certain evidence discovered following the execution of a search warrant at his house. In this appeal, the defendant claims that the trial court improperly denied his motion to suppress certain evidence seized as a result of the search warrant that the defendant claims was issued without a showing of probable cause in violation of the fourth amendment to the United States constitution[3] and article first, § 7, of the Connecticut constitution.[4] We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In March 14, 2013, Supervisory Inspector Michael Sullivan of the Connecticut Division of Criminal Justice and Detective Zachary Sherry of the Hartford Police Department (affiants) applied for a search and seizure warrant pertaining to the defendant's residence, a single-family home located in the town of East Hartford. The affiants were assigned to the Greater New Britain Shooting Task Force, which is described as a multiagency investigative unit charged with reducing violent crime in the greater New Britain area. The affiants claim over thirty-five years of combined investigative experience.

In their application for a search warrant, the affiants averred what may be summarized as follows: On March 4, 2013, Sullivan was in contact with David Pierro, who claimed he was a retired police officer from Port Chester, New York. Pierro stated that he had sold a "M16 AR 15 A2 upper receiver" (upper receiver) to the defendant through the website Gunbroker.com. Pierro stated that he notified the police regarding this sale because he had performed an Internet search on the defendant's name and discovered that the defendant had previously been involved in a shooting.

The affiants discovered that the defendant had a prior conviction for conspiracy to commit assault in the first degree, stemming from a 1994 shooting in New Britain. Sullivan informed Pierro of this fact. Having confirmed the defendant's felony status, Pierro then forwarded documents from Gunbroker.com to Sullivan indicating that the defendant had made eight other transactions through the website in the previous two years. Pierro also agreed to ship the upper receiver to Sullivan upon receipt of payment from the defendant so that the affiants could arrange a controlled delivery of the upper

receiver to the defendant.

The affiants averred that they confirmed relevant information regarding the defendant's address. They confirmed that the shipping address that the defendant reportedly provided to Pierro belonged to the defendant by verifying land records and verifying the automobile registration of a car parked in the driveway. Additionally, the affiants verified that the telephone number the defendant provided to Gunbroker.com correlated to the defendant's address. On March 7, 2013, Sullivan received an e-mail from Pierro containing a copy of a money order for the purchase price of the upper receiver from the defendant, which listed the defendant's home address. On March 11, 2013, Sullivan received a package from Pierro through the mail containing the upper receiver and an envelope containing the money order, which listed the defendant's address as the return address.

Pierro informed the police that the "only reason" someone would purchase the upper receiver is if he were assembling an assault rifle. Pierro elaborated that the fact that the defendant made eight additional purchases within the previous two years on Gunbroker.com further supported his conclusion. The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), which was assisting the affiants in their investigation,[5] agreed with Pierro's conclusion. Additionally, ATF Special Agent Jacob Berrick informed the affiants that he was able to access the defendant's most recent purchase on Gunbroker.com, a "MGW AR-15 AR15 90 round drum," which the affiants averred is a mechanism that holds the ammunition for the firearm, for $125.[6] The affiants averred that the discovery of this transaction supported the conclusion that the defendant was purchasing separate firearm parts in order to assemble a complete, functioning firearm.

Moreover, the affiants averred that from their training and experience, they "know . . . that typical [firearm] owners do not purchase firearms parts but rather purchase firearms as a whole. Those people that do purchase firearms parts are likely to have a greater interest and expertise in firearms than a typical firearms owner. It is therefore, very likely that [the defendant] has an advanced knowledge and interest in firearms and probably has other firearms in his possession." The affiants further averred that, from their training and experience, they have found that those who illegally possess firearms commonly store such firearms in their residence.

The search warrant was issued on March 14, 2013, and executed the following day. The police seized numerous firearms and firearm related items from the defendant's residence. The defendant filed a motion to suppress evidence claiming that the search warrant was not supported by probable cause. See Practice Book §§ 41-12 and 41-13 (4). After a hearing on the motion, the trial

court denied the defendant's motion and later filed a memorandum of decision. The defendant entered pleas of nolo contendere to four counts of criminal possession of a firearm in violation of § 53a-217 (a), conditioned on his right to appeal the denial of his motion to suppress. See General Statutes § 54-94a; Practice Book § 61-6 (a) (2) (A). This appeal followed.[7]

We begin by setting forth the relevant standard of review. "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on [that] issue, therefore, is subject to plenary review on appeal." (Internal quotation marks omitted.) *State* v. *Buddhu*, 264 Conn. 449, 459, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004).

The legal principles that guide our analysis are well established. Both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution prescribe that a search warrant shall issue only upon a showing of probable cause. "Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citations omitted; internal quotation marks omitted.) *State* v. *Shields*, 308 Conn. 678, 689–90, 69 A.3d 293 (2013), cert. denied,       U.S.     , 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014). The determination of probable cause is reached by applying a "totality of the circumstances" test. *State* v. *Flores*, 319 Conn. 218, 225, 125 A.3d 157 (2015), cert. denied,       U.S.     , 136 S. Ct. 1529, 194 L. Ed. 2d 615 (2016); see also *Florida* v. *Harris*,       U.S.      , 133 S. Ct. 1050, 1055, 185 L. Ed. 2d 61 (2013) ("[W]e have consistently looked to the totality of the circumstances . . . . We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." [Citations omitted.]).

"The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at

issue presented a substantial factual basis for the [issuing judge's] conclusion that probable cause existed." (Internal quotation marks omitted.) *State* v. *Duntz*, 223 Conn. 207, 215, 613 A.2d 224 (1992). "This court has recognized that because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding. . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . ." (Internal quotation marks omitted.) *State* v. *Flores*, supra, 319 Conn. 225; see also *State* v. *Velez*, 215 Conn. 667, 673, 577 A.2d 1043 (1990) ("[a] reviewing court should pay great deference to the trial court's determination regarding the existence of probable cause"). In evaluating whether the warrant was predicated on probable cause, a reviewing court may consider only the information set forth in the four corners of the affidavit that was presented to the issuing judge and the reasonable inferences to be drawn therefrom. *State* v. *Shields*, supra, 308 Conn. 691.

In the present case, the defendant claims that there were insufficient facts contained in the affidavit accompanying the search warrant application to support the issuing judge's conclusion that probable cause existed to search the defendant's home. Specifically, the defendant claims that his purchase of firearm parts was merely innocent conduct that was an insufficient basis to conclude there was probable cause that the defendant possessed a firearm. The defendant further claims that Pierro was an unreliable source of information and that the affiants lacked sufficient expertise to conclude that the defendant's behavior was consistent with criminal activity. The state claims that the defendant's alleged lawful purchases of firearm parts supported probable cause, that Pierro was reliable, and that the affiant's conclusions were proper. We agree with the state.

We begin with the defendant's claim that the alleged lawful firearm part purchases were an insufficient basis to conclude there was probable cause in the present case. According to the defendant, because the affidavit lacked an allegation that the defendant had acquired the necessary parts to construct a firearm, it was unreasonable to infer from his alleged Gunbroker.com transaction history that he could construct, and therefore possess, a firearm. The state asserts that the affidavit need not definitively establish that the defendant possessed a firearm. Rather, the state claims that the defendant's accumulation of firearm parts supported the inference that he intended to construct a firearm, which, in turn, supported probable cause to believe that he possessed a firearm. We disagree with the defendant

because his claim suffers from the doctrinal flaw that it requires too high of a degree of certainty for a finding of probable cause. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but *the degree of suspicion that attaches to particular types of noncriminal acts*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Illinois* v. *Gates*, 462 U.S. 213, 244 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

This court previously has addressed the degree of suspicion that attaches to noncriminal conduct. In *State* v. *Buddhu*, supra, 264 Conn. 453–54, the search warrant affidavit included allegations that the defendant's son and an informant were involved in a forgery scheme in which forged checks were deposited in the informant's account and the informant would make periodic withdrawals from the account and transfer the cash and bank book to the defendant's son. Before the defendant's son departed for National Guard duty, he instructed the informant to make withdrawals and to give the money and bank book to the defendant in a sealed envelope and later retrieve an envelope with the bank book in it from the defendant. Id., 454. After the police executed a search warrant on the home and office of the defendant, the trial court suppressed the evidence recovered therefrom, concluding that the only reasonable inference was that the defendant was unaware of the forgery scheme and the only nexus between the defendant and the crime was the exchange of sealed envelopes. Id., 462. In reversing the judgment, we concluded "that the issuing judge reasonably inferred that the defendant, having received, on several occasions, sealed envelopes on [the defendant's son's] behalf from a relatively unfamiliar person, probably was involved in the underlying illegal activities." Id., 463. Hence, while the act of exchanging sealed envelopes with a deployed son's acquaintance on his behalf is not guilty conduct, the degree of suspicion that attached to the defendant's conduct was sufficient to reasonably infer that the defendant was involved in the underlying criminal activity. Id.

In the present case, the issuing judge reasonably could have inferred that the defendant intended to assemble a firearm.[8] The affidavit alleged that the defendant purchased two specific parts—"M16 AR 15 A2 upper receiver" and a "MGW AR-15 AR15 90 round drum"[9]—to the same model firearm. The defendant made at least seven additional purchases on Gunbroker

.com. See footnote 6 of this opinion. In assessing whether there are sufficient facts found in the affidavit, it is important that firearm parts are of little to no practical utility outside the assembly of a firearm. It requires no great logical leap to infer that the defendant intended to use the parts in their only practical utility, namely, assembly of a firearm. Indeed, the affidavit affirms that Pierro indicated that the "only reason" someone would buy an upper receiver is to assemble a firearm. Moreover, the appropriateness of the inference that the defendant intended to assemble a firearm was buttressed by the information provided by both Pierro and the ATF that the "likely scenario," given the defendant's transaction history, was that the defendant intended to assemble a firearm.

The defendant claims, however, that the information provided by Pierro should not be accorded any weight because he was an unreliable informant. We disagree. First, it is significant that Pierro was a citizen informant. "Courts have properly distinguished between . . . confidential informants and the average citizen who, as a victim or a witness, happens to have information useful to the police. Such citizen informers are considered more deserving of credibility than are underworld informers, and courts have accordingly tended to examine the basis and sufficiency of a citizen informer's information more closely than his credibility." (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 112, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002). Second, Pierro was named in the affidavit and communicated directly with the affiants via telephone and e-mail. "[A]s this court has repeatedly recognized, [t]he fact that an informant's identity is known . . . is significant because the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for . . . falsely reporting an incident under General Statutes § 53a-180[c], had the information supplied proved to be a fabrication." (Internal quotation marks omitted.) *State* v. *Flores*, supra, 319 Conn. 228.

Additionally, the affiants corroborated information that Pierro had provided to them. If, through corroboration, it is shown that the informant has provided reliable information, the issuing judge may credit other information provided by the informant. See *State* v. *Ruscoe*, 212 Conn. 223, 231, 563 A.2d 267 (1989) ("[t]he theory of corroboration is that a statement [that] has been shown true in some respects is reasonably likely to be true in the remaining respects" [internal quotation marks omitted]), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); see also *State* v. *Morrill*, 205 Conn. 560, 567, 534 A.2d 1165 (1987) (previous reliability in other cases is basis for crediting informant in case at hand). In the present case, Pierro provided

the defendant's name and address to the affiants, which the affiants subsequently confirmed. Pierro then provided the actual envelope and money order payable to Pierro that the defendant sent as payment for the upper receiver. That envelope included the defendant's return address. In addition, an ATF agent confirmed that the defendant had made an additional purchase of an assault rifle part in close temporal proximity with the transaction that Pierro reported. Consequently, greater weight may be accorded the remaining information that Pierro provided, namely, the information regarding the defendant's additional transactions and the fact that Pierro is a retired police officer and sells firearm parts as a hobby.[10]

The defendant claims, however, that, with respect to Pierro's claim regarding the intended purpose of the upper receiver, the affiants improperly treated Pierro as an "expert" on firearms and firearm parts. We disagree with this characterization of Pierro. In light of our previous conclusion that the issuing judge may credit the averment that Pierro was a retired police officer who sold firearm parts as a hobby, we also conclude that the issuing judge reasonably could have determined that Pierro's opinion was worthy of at least some weight. Indeed, the issuing judge reasonably could have relied on Pierro's experience in the private sales of firearm parts on Gunbroker.com for Pierro's conclusion with respect to the intended purpose of the upper receiver. The issuing judge reasonably could have inferred that Pierro, as a hobbyist, had at least some general knowledge regarding the likely end use of the firearm parts he has sold from his interactions with buyers. Pierro's opinion, however, was not the sole basis for this conclusion. To the contrary, the affiants sought the opinion of the ATF, which concurred with the conclusion reached by Pierro.[11] Accordingly, we conclude it was proper for the issuing judge to rely on the information provided by Pierro.

Nevertheless, the defendant posits alternative inferences that reasonably could have been drawn. The defendant asserts that, contrary to the conclusion reached by Pierro that the "only reason" someone would purchase an upper receiver would be to construct an operable firearm, Pierro's possession of an upper receiver for the purpose of selling it as a hobby demonstrates a reasonable legitimate purpose for acquiring an upper receiver. The defendant cites *United States* v. *Vigeant*, 176 F.3d 565 (1st Cir. 1999), in support of his argument. *Vigeant* is distinguishable on its facts. In that case, the United States Court of Appeals for the First Circuit addressed whether there was sufficient information for probable cause to conclude that the defendant had laundered drug money. Id., 569. The court concluded that there was an insufficient nexus between alleged drug activity, which itself was insufficiently substantiated, and the bank activity that took

place six months thereafter. Id. In addition, the court concluded that the banking and investment activity, the most suspicious of which was a large deposit of small bills, was not of a character to infer the criminal activity. Id. 569–70. Unlike the provenance of sums of money deposited in a bank account, there are far fewer inferences to be drawn from the purchase of firearm parts. Thus, while it is possible that someone could purchase parts for lawful resale, Pierro and the ATF explained that the likely purpose was to construct a firearm. As we previously have noted, "[i]n determining whether the search warrant was supported by probable cause . . . the trial court was not required to consider whether some possible state of facts that was consistent with the facts presented in the affidavit would preclude a finding of probable cause." (Emphasis omitted.) *State* v. *Grant*, 286 Conn. 499, 515, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008).[12] In sum, we find that the facts alleged in the affidavit furnished a sufficient basis to infer that the defendant intended to assemble a firearm.

The defendant also attacks the sufficiency of the affiants' knowledge and expertise as a basis to reach their conclusions with respect to the behavior patterns of firearm owners. Specifically, the defendant claims that the affiants failed to demonstrate any expertise in firearms and firearms parts. The affidavit recited conclusions with respect to habits and behaviors of people who purchase firearm parts as compared to the typical firearm owner, i.e., that people who purchase firearm parts likely have greater interest and expertise in firearms and, therefore, likely to possess firearms. In addition, the affiants averred that people who possess firearms illegally commonly store such firearms in their homes. These are not the kinds of conclusions that require a demonstration of sophisticated technical expertise. We find that the affiants provided sufficient information for crediting their conclusion, namely, their thirty-five years of combined investigative experience, including their experience on the Greater New Britain Shooting Task Force. See *State* v. *Shields*, supra, 308 Conn. 693 ("[i]n light of [the police officer's] training and experience with the evidence unit and the Internet crimes against children task force, there was a substantial basis for crediting [his] general observations about . . . the behavioral patterns of persons who engage in the sexual exploitation of children, including his assertion that persons who sexually abuse children also are prone to collect child pornography");[13] *State* v. *DiMeco*, 128 Conn. App. 198, 206, 15 A.3d 1204 (judge issuing warrant to search for child pornography entitled to credit opinion of affiant with training and experience in matters concerning pedophiles and sexual predators of children), cert. denied, 301 Conn. 928, 22 A.3d 1275, cert. denied, 565 U.S. 1015, 132 S. Ct. 559, 181 L. Ed. 2d 398 (2011). Accordingly, the issuing judge reasonably

relied on the conclusion reached by the affiants.

Finally, the defendant claims that the trial court made improper findings outside the scope of the search warrant affidavit. The defendant claims there is nothing in the warrant affidavit to support the trial court's conclusion that the issuing judge reasonably could have concluded that the defendant "was in possession of a firearm, which he was disqualified from possessing as a convicted felon. The defendant was storing a firearm at his residence. He was involved in the illegal trafficking of firearms." As we previously have discussed in this opinion, the first two findings are reasonable inferences to be drawn from the facts alleged in the affidavit. With respect to the finding that the issuing judge could have concluded that the defendant was trafficking in firearms, even if the finding was improper, such a finding was not necessary to uphold the search warrant. This is so because the affiants alleged a violation of § 53a-217 (a), the statute criminalizing possession of firearms, which the trial court found probable cause to believe the defendant violated. It was immaterial whether the trial court further found probable cause to believe that the defendant was trafficking firearms because the affiants did not allege that the defendant was engaged in such conduct. A review of the affidavit demonstrates that such a finding was not necessary to conclude that there was probable cause to believe that the defendant simply possessed a firearm. We conclude that, on the basis of our review of the search warrant affidavit as a whole, the trial court properly found that the facts submitted were sufficient to support a finding of probable cause.

The judgment is affirmed.

In this opinion the other justices concurred.

* December 28, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] General Statutes (Rev. to 2013) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony . . . . For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction, and a motor vehicle violation for which a sentence to a term of imprisonment of more than one year may be imposed shall be deemed an unclassified felony." All references hereinafter to § 53a-217 (a) are to the 2013 revision of the statute.

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fourth amendment is applicable to the states by incorporation through the due process clause of the fourteenth amendment to the United States constitution. See, e.g., *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[4] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

In contrast to the federal constitution, the Connecticut constitution does not contemplate a "good faith" exception to the exclusion rule pursuant to which evidence seized in the execution of a warrant lacking probable cause may nevertheless be used against the defendant. See *State* v. *Marsala*, 216 Conn. 150, 171, 579 A.2d 58 (1990).

[5] ATF had reportedly served a subpoena upon Gunbroker.com in order to gather more information regarding the defendant's transactions on the website. At the time the search warrant application was filed, Gunbroker. com had not responded to the subpoena.

[6] It is not clear whether this transaction is one of or in addition to the eight other Gunbroker.com transactions Pierro reported to the affiants.

[7] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[8] We disagree with the defendant that the trial court improperly treated his 1994 conviction of conspiracy to commit assault as propensity evidence. The trial court stated, "[t]he defendant was previously convicted of a firearms related felony offense, which disqualified him from possessing a firearm." This demonstrates that the trial court considered his prior conviction only as an element of the suspected crime upon which the search warrant was predicated, not as a basis for drawing inferences with respect to the intended purpose of the firearm parts.

[9] We note that possession and transfer of a large capacity magazine, defined to include "any . . . drum . . . that has the capacity of . . . more than ten rounds of ammunition," was not regulated by the state at the time of the search warrant application. General Statutes § 53-202w (a) (1). The regulation of such a part took effect April 4, 2013. Public Acts 2013, No. 13-3, § 23.

[10] The defendant claims that Pierro was unreliable because, when he spoke to the affiants, he exaggerated the crime the defendant had committed that disqualified him from owning a firearm. Specifically, the defendant points to the fact that Pierro informed the police that the defendant was "involved in a New Britain shooting several years ago," whereas the defendant was convicted of conspiracy, but not the underlying substantive offense, nineteen years before his attempted purchase of the upper receiver. Even assuming that Pierro's statement was an exaggeration, the issuing judge reasonably could find that Pierro was a reliable informant because of the corroborating information regarding the purchase of the upper receiver, which was more pertinent to the probable cause determination.

[11] The defendant also claims that the affidavit is not sufficiently clear as to with what the ATF concurred. The affidavit provides in relevant part: "Pierro informed police that the only reason someone would purchase [an upper receiver] is if they were assembling [an] assault rifle. Pierro indicated that with [the defendant] making eight additional purchases from Gunbroker-.com that this was the likely scenario. Possession of [an] upper receiver is necessary in order to assemble a functioning . . . assault rifle. The ATF does agree with Pierro's conclusion." The trial court found that the issuing judge reasonably could have interpreted this paragraph to mean that the "ATF agreed with Pierro's conclusion regarding the reason for the defendant's purchase of the parts—to assemble an assault rifle." We agree. In keeping with this court and the United States Supreme Court's constitutional preference for judicial determination of probable cause, we abjure applying hypertechnical, exacting scrutiny of the grammar and usage in an affidavit in favor of a reasonable interpretation of information set forth within the four corners of the affidavit in the light most favorable to the issuing judge's determination of probable cause. See *State* v. *Shields*, supra, 308 Conn. 691; see also *United States* v. *Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965) ("If the teachings of the [c]ourt's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted

by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.").

[12] We are also unpersuaded by the other nonbinding out-of-state and Superior Court cases cited by the defendant.

[13] We are not persuaded by the defendant's claim, relying solely on the out-of-state, intermediate appellate court case *Burnett* v. *State*, 848 So. 2d 1170 (Fla. App. 2003), that the affiants are required to recite more details regarding their training and experience.

———————————————