******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* STEPHEN HANISKO
(AC 40831)

Prescott, Elgo and Moll, Js.

*Syllabus*

Convicted of the crime of possession of child pornography in the second degree, the defendant appealed to this court. In November, 2008, the state police had received from a Wyoming special agent a spreadsheet, which indicated that a certain computer associated with a particular Internet Protocol address was identified as a download candidate for twenty-five files of suspected child pornography. In September, 2009, detectives A and C obtained a warrant to search the property where both the defendant and the holder of the Internet services account associated with the identified computer resided and to seize certain described categories of evidence. A and C executed the search and seizure warrant and, while they were at the property, the defendant stated that he had used a certain peer-to-peer network to download pornography. In 2014, after A and C had examined the evidence that had been seized from the property and uncovered videos depicting child pornography, the trial court issued a warrant for the defendant's arrest. On the morning of the first day of trial, the defendant filed a motion to suppress the evidence seized from the property, which the trial court denied. On appeal, the defendant claimed, inter alia, that the trial court improperly denied his motion to suppress, in which he claimed that the information in the search warrant affidavit was stale at the time that the search warrant was issued because that affidavit referenced an isolated occurrence from approximately one year earlier and, as a result of the lapse of time and the absence of any similar recurrences, there was no probable cause to believe that the materials identified in the search warrant would be in his possession when the warrant was issued. *Held*:

1. The trial court properly denied the defendant's motion to suppress evidence seized pursuant to the search and seizure warrant and determined that probable cause existed to support the issuance of that warrant; the search warrant affidavit, which alleged that the user of the identified computer distributed or attempted to distribute suspected child pornography, including at least one file of known child pornography, on a peer-to-peer network over the course of several days, suggested that the user of the identified computer wilfully and deliberately accumulated and sought to disseminate such video files over the Internet, and the passage of approximately ten months between the receipt of information from the Wyoming special agent and the issuance of the search warrant did not render the information in the search warrant affidavit stale, as that affidavit included certain statements from A and C that individuals who possess child pornography often will store such material indefinitely if they believe that their illegal activities have gone undetected, and that information contained within a computer, or other media, remains electronically stored unless the information is deleted and subsequently overwritten, which permitted an inference by the issuing judge that, if the user had child pornography files on the identified computer, the user would still have those files in his or her possession at the time that the search warrant was executed, even though the such warrant was not issued until approximately ten months after the state police received the information from the Wyoming special agent.

2. The defendant's claim that he was entitled to a judgment of acquittal on the ground that the trial court's evidentiary rulings were incorrect, which was based on his claim that the court's failure to recognize that the oppressive delay between the execution of the search and seizure warrant in 2009 and the issuance of the arrest warrant in 2014 resulted in a violation of his right to due process, was not reviewable, the defendant having failed to timely raise that claim in a pretrial motion to dismiss; the defendant could have raised his due process claim by way of a pretrial motion, as that claim could have been determined without a trial of the general issue and, by failing to do so, he had waived his

right to raise that claim.

Argued September 21, 2018—officially released January 15, 2019

*Procedural History*

Substitute information charging the defendant with the crime of possession of child pornography in the second degree, brought to the Superior Court in the judicial district of New Haven at Meriden, geographical area number seven, where the court, *Hon. John F. Cronan*, judge trial referee, denied the defendant's motion to suppress certain evidence; thereafter, the matter was tried to the court; subsequently, the court denied the defendant's motion for a judgment of acquittal; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Howard I. Gemeiner*, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *James Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Stephen Hanisko, appeals from the judgment of conviction, rendered after a court trial, of possession of child pornography in the second degree in violation of General Statutes (Rev. to 2009) § 53a-196e.[1] On appeal, the defendant claims that (1) the trial court improperly denied his motion to suppress evidence seized pursuant to a search and seizure warrant (search warrant) because the information contained in the search warrant affidavit was stale at the time that the search warrant was issued, and (2) the trial court's "evidentiary rulings" were incorrect because the court failed to recognize the oppressive delay between the execution of the search warrant and the issuance of the warrant for his arrest, resulting in a violation of his right to due process. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which the trial court reasonably could have found, and procedural history are relevant to our resolution of the defendant's claims. On November 14, 2008, the Connecticut State Police Computer Crimes and Electronic Evidence Laboratory (computer crimes laboratory) received a spreadsheet and a DVD from a special agent of the Wyoming Internet Crimes Against Children Task Force (Wyoming special agent). The spreadsheet contained Internet Protocol (IP) addresses that had been captured during an investigation into electronic file sharing of child pornography. Specifically, the spreadsheet indicated that, between November 7 and 14, 2008, the computer associated with a particular IP address (identified computer) was identified as a "download candidate"[2] for, what appeared to be, twenty-five files of child pornography. The DVD contained files of known child pornography, which the computer crimes laboratory used for comparison against the twenty-five files that were available for download from the identified computer.

While reviewing the data provided by the Wyoming special agent, the Connecticut state police uncovered a match between one of the twenty-five files listed on the spreadsheet and one file on the DVD. The matching files contained two separate clips of two different sets of male and female children, who appeared to be between twelve and fourteen years old, engaging in various sexual acts.

The state police later determined that the holder of the Internet services account associated with the identified computer resided at 50 Carpenter Lane in Wallingford (property). On August 13, 2009, Jonathan Carreiro and David Aresco, detectives with the Connecticut State Police Computer Crimes Unit (computer crimes unit), conducted a surveillance of the property. Detective Carreiro observed, among other things, a black sign labeled with the name "Hanisko" to the left

of the driveway. On August 14, 2009, the Connecticut State Police Central Criminal Intelligence Unit confirmed that the Internet services account holder lived at the property and informed Detective Carreiro that several other individuals resided there as well, including the defendant. On August 18, 2009, Detectives Carreiro and Aresco conducted a second surveillance of the property. This time, Detective Carreiro observed a white pickup truck in the driveway, which he later determined was registered to the defendant.

On September 10, 2009, Detectives Carreiro and Aresco obtained a warrant to search the property and to seize certain described categories of evidence of violations of General Statutes §§ 53a-194[3] and 53a-196b.[4] In the search warrant affidavit, Detectives Carreiro and Aresco provided the foregoing details of their investigation and averred to the following additional information. Both detectives are assigned to the computer crimes laboratory and have received training relating to the investigation of Internet related crimes, child pornography crimes, and computer data analysis. The detectives know from their training and experience that so-called peer-to-peer networks are frequently used in the trading of child pornography; individuals using peer-to-peer file sharing networks can choose to install publicly available software that facilitates the trading of images, and such software allows those individuals to search for pictures, movies, and other digital files. The detectives know that information contained within a computer or other media, even if deleted, often remains electronically stored until the computer overwrites the space previously allocated to the deleted file. On the basis of their training and experience, and the training and experience of other law enforcement personnel, the detectives know that individuals who possess child pornography often will store such material for future viewing and will maintain these materials indefinitely if they believe that their illegal activities have gone undetected. In light of the foregoing information, the detectives averred that they had probable cause to believe that evidence of violations of §§ 53a-194 and 53a-196b would be located on the property.

On September 11, 2009, Detectives Carreiro and Aresco, along with other state and local police officers, executed the search warrant at the property. While there, Detective Carreiro explained the purpose of the search warrant to the defendant and asked him several questions. During their conversation, the defendant expressed that he had used Limewire, a peer-to-peer network, to download pornography. Ultimately, the state police seized fifty-six pieces of evidence, including eight hard drives and optical disks containing forty-eight video files. Shortly thereafter, the seized evidence was transported to the computer crimes laboratory for a forensic examination.

Eventually, the state police learned that, as a result of a backlog, the computer crimes laboratory was unable to process evidence that had been seized in multiple cases, including the evidence seized from the property. Consequently, the computer crimes unit began removing the seized items from the computer crimes laboratory in order to conduct its own forensic examination. Between April and August, 2013, Detectives Carreiro and Aresco examined the evidence that had been seized from the property. Their examination uncovered hours of videos depicting child pornography.

On January 21, 2014, the state applied for a warrant to arrest the defendant for possession of child pornography in the second degree in violation of § 53a-196e (arrest warrant). On January 28, 2014, the trial court issued the arrest warrant, and, on March 27, 2014, the defendant was arrested. The matter proceeded to trial approximately three years later.

On the morning of March 22, 2017, the first day of trial, the defendant filed a motion to suppress the evidence seized from the property. The defendant claimed that the evidence was seized in violation of his rights under the United States and Connecticut constitutions and that the information contained in the search warrant affidavit was stale and did not give rise to a finding of probable cause. The trial court heard oral argument with regard to the motion to suppress and issued an oral ruling denying the motion.

A trial to the court commenced immediately thereafter,[5] and the state called Detectives Carreiro and Aresco to testify. Both detectives testified, among other things, that the delay between when the evidence seized from the property was brought to the computer crimes laboratory and when they began their own forensic examination resulted from the inability of the computer crimes laboratory to process voluminous evidence in many cases in a more timely manner. The state rested at the end of the first day of trial.

On March 23, 2017, the second and final day of the trial, the defendant moved for a judgment of acquittal, reserving argument upon the completion of evidence. The defendant testified in his own defense and did not mention any prejudice that he experienced as a consequence of any delay. After the defense rested, the court heard oral argument on the defendant's motion for a judgment of acquittal. Defense counsel argued that the "totality of the delays"—namely, the delays between the receipt of the information from the Wyoming special agent in November, 2008, the issuance of the search warrant in September, 2009, and the issuance of the arrest warrant in January, 2014—violated the defendant's right to due process. Additionally, defense counsel argued that the "totality of the circumstances"

or "cumulative nature of the delays" was "inherently prejudicial." The state argued to the contrary, and the trial court denied the motion.

That same day, the trial court found the defendant guilty of possession of child pornography in the second degree in violation of § 53a-196e and rendered a judgment of conviction for the same. On August 25, 2017, the trial court sentenced the defendant to six years of incarceration, execution suspended after thirty months of incarceration, twenty-four of which are mandatory, followed by ten years of probation. This appeal followed.

I

We first turn to the defendant's claim that the trial court improperly denied his motion to suppress because the information in the search warrant affidavit was stale at the time that the search warrant was issued. The defendant contends that the information was stale because the search warrant affidavit referenced an isolated occurrence from one year earlier. According to the defendant, as a result of the lapse of time and the absence of any similar recurrences, there was no probable cause to believe that the materials identified in the search warrant would be in his possession when the warrant was issued. We disagree.

We begin by setting forth the applicable standard of review. When reviewing the trial court's denial of a motion to suppress, the standard of review to be applied depends on whether the challenge asserted on appeal is to the factual basis of the trial court's decision or to its legal conclusions. *State* v. *DiMeco*, 128 Conn. App. 198, 202, 15 A.3d 1204, cert. denied, 301 Conn. 928, 22 A.3d 1275, cert. denied, 565 U.S. 1015, 132 S. Ct. 559, 181 L. Ed. 2d 398 (2011). "[T]o the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Internal quotation marks omitted.) Id., 202–203. "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law." (Internal quotation marks omitted.) *State* v. *Holley*, 324 Conn. 344, 351, 152 A.3d 532 (2017). Accordingly, "[o]ur review of the question of whether an affidavit in support of an application for a search [and seizure] warrant provides probable cause for the issuance of the warrant is plenary." *State* v. *Rodriguez*, 163 Conn. App. 262, 266, 135 A.3d 740, cert. denied, 320 Conn. 934, 134 A.3d 622, cert. denied,      U.S.    , 137 S. Ct. 167, 196 L. Ed. 2d 140 (2016).

We next discuss the legal principles relevant to the defendant's claim. "Both the fourth amendment to the

United States constitution and article first, § 7, of the Connecticut constitution prescribe that a search warrant shall issue only upon a showing of probable cause. Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . The determination of probable cause is reached by applying a totality of the circumstances test. . . .

"The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the [issuing judge's] conclusion that probable cause existed. . . . [Our Supreme Court] has recognized that because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . *we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding.* . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . . In evaluating whether the warrant was predicated on probable cause, a reviewing court may consider only the information set forth in the four corners of the affidavit that was presented to the issuing judge and the reasonable inferences to be drawn therefrom." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Holley*, supra, 324 Conn. 351–53.

Of course, "[t]he determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. . . . Consequently, whether a reasonable likelihood exists that evidence identified in the warrant affidavit will be

found on the subject premises is a determination that must be made on a case-by-case basis. Accordingly, we have refused to adopt an arbitrary cutoff date, expressed either in days, weeks or months, beyond which probable cause ceases to exist. . . . The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched. . . . [W]hen an activity is of a protracted and continuous nature the passage of time becomes less significant."[6] (Citation omitted; internal quotation marks omitted.) *State* v. *Buddhu*, 264 Conn. 449, 465–66, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004).

In *United States* v. *Raymonda*, 780 F.3d 105, 114 (2d Cir.), cert. denied, U.S. , 136 S. Ct. 433, 193 L. Ed. 2d 337 (2015), the United States Court of Appeals for the Second Circuit recognized that "[t]he determination of staleness in investigations involving child pornography is unique. . . . Because it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes, evidence that such persons possessed child pornography in the past supports a reasonable inference that they retain those images—or have obtained new ones—in the present. . . . Crucially, however, the value of that inference in any given case depends on the preliminary finding that the suspect is a person interested in images of child pornography. The alleged proclivities of collectors of child pornography, that is, are only relevant if there is probable cause to believe that [a given defendant] *is* such a collector." (Citations omitted; emphasis in original; internal quotation marks omitted.) The Second Circuit went on to explain that, in cases where courts have inferred that a suspect was a collector of child pornography on the basis of a single incident of possession or receipt, that inference "did not proceed merely from evidence of his access to child pornography at a single time in the past. Rather, it proceeded from circumstances suggesting that he had accessed those images willfully and deliberately, actively seeking them out to satisfy a preexisting predilection. Such circumstances tend to negate the possibility that a suspect's brush with child pornography was a purely negligent or inadvertent encounter, the residue of which was long ago expunged. They suggest that the suspect accessed those images because he was specifically interested in child pornography, and thus—as is common among persons interested in child pornography—likely hoarded the images he found." Id., 115.

In addition to the Second Circuit, other United States Circuit Courts of Appeal and our Superior Court have recognized that collectors of child pornography tend to retain such images and videos, and, thus, the passage of time between the alleged criminal activity and the

issuance of a search and seizure warrant does not, in itself, render information contained in the warrant affidavit stale. See *United States* v. *Morgan*, 842 F.3d 1070, 1074 (8th Cir. 2016) (recognizing that five month lapse did not render warrant affidavit information stale and concluding information was not stale where seventy-five days had passed because affiants attested that child pornography collectors tend to retain images and that computer programs that download these images often leave files, logs, or remnants that show exchange, transfer, distribution, possession, or origin of such files), cert. denied,    U.S.   , 137 S. Ct. 2176, 198 L. Ed. 2d 244 (2017); *United States* v. *Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) (recognizing crime of child pornography is not fleeting and generally carried out in secrecy of home over long time period and concluding warrant affidavit information was not stale), cert. denied,    U.S.   , 135 S. Ct. 1573, 191 L. Ed. 2d 656 (2015); *United States* v. *Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) (recognizing passage of time alone cannot demonstrate staleness and determining warrant affidavit information was not stale even though warrant was executed two years and four months after defendant's alleged last contact with child pornography distributor); *United States* v. *Watzman*, 486 F.3d 1004, 1008–1009 (7th Cir.) (recognizing one year old warrant affidavit information was not necessarily stale as matter of law and concluding information was not stale where only three months had passed and agent attested that possessors of child pornography save their materials), cert. denied, 552 U.S. 1052, 128 S. Ct. 682, 169 L. Ed. 2d 533 (2007); see, e.g., *State* v. *Roesing*, Superior Court, judicial district of Litchfield, Docket No. CR-00-103351, 2001 WL 951287, *5 (July 19, 2001) (*DiPentima, J.*) (stating nature of crimes of attempted possession and possession of child pornography is such that evidence sought can reasonably be expected to be kept for long periods of time and concluding search warrant affidavit information was not stale as to attempted possession charge where approximately three months had passed because computer related devices used were likely to be kept at defendant's home for long period of time).

Mindful of the foregoing principles, we now evaluate the defendant's claim. The defendant argues that there was no information presented in the search warrant affidavit to suggest that (1) he intentionally downloaded the suspected files in question or kept them for future reference, (2) he collected this type of material, or (3) this kind of peer-to-peer file retrieval from the identified computer had ever occurred, either before or after the computer crimes laboratory received the spreadsheet and DVD from the Wyoming special agent. He contends that the allegations in the search warrant affidavit in the present case are akin to those in *United States* v. *Raymonda*, supra, 780 F.3d 105, in which the Second Circuit concluded that the search warrant at issue was

not supported by probable cause, because, according to the defendant, in the present case "there was only one incident reported with no other traces to suspect any additional discoveries would be made." We disagree.

In *Raymonda*, the warrant affidavit "alleged only that, on a single afternoon more than nine months earlier, a user with an IP address associated with [the defendant's] home opened between one and three pages of a website housing thumbnail links to images of child pornography, but did not click on any thumbnails to view the full-sized files. The [warrant] affidavit contained no evidence suggesting that the user had deliberately sought to view those thumbnails or that he discovered [the website] while searching for child pornography—especially considering that [the agent] himself only uncovered the website through an innocuous link on the message board of another site not explicitly associated with child pornography. Nor was there any evidence that the user subsequently saved the illicit thumbnails to his hard drive, or that he even saw all of the images, many of which may have downloaded in his browser outside immediate view. Far from suggesting a knowing and intentional search for child pornography, in short, the information in [the warrant] affidavit was at least equally consistent with an innocent user inadvertently stumbling upon a child pornography website, being horrified at what he saw, and promptly closing the window." (Footnote omitted.) *United States* v. *Raymonda*, supra, 780 F.3d 117. Thereupon, the Second Circuit held that the search warrant that was issued was not supported by probable cause because, "[u]nder those circumstances, absent any indicia that the suspect was a collector of child pornography likely to hoard pornographic files . . . a single incident of access does not create a fair probability that child pornography will still be found on a suspect's computer months after all temporary traces of that incident have likely cleared." Id.

The present case is readily distinguishable from *Raymonda*. Here, Detectives Carreiro and Aresco averred, in the search warrant affidavit, that the identified computer was recognized twenty-five times over the course of several days as a download candidate for, what appeared to be, child pornography and that the state police was able to confirm a match between one of the twenty-five child pornography files listed on the spreadsheet and one child pornography file on the DVD provided by the Wyoming special agent. In other words, according to the search warrant affidavit, the user of the identified computer did not simply visit a webpage containing links to images of child pornography on one occasion, as in *Raymonda*; rather, the user had file sharing software installed on his or her computer and was using that software to share multiple files of suspected child pornography by way of a peer-to-peer net-

work on more than one occasion, and at least one of those files was confirmed as being known child pornography. This alleged distribution of, or attempt to distribute, child pornography on a peer-to-peer network over the course of several days suggests that the user wilfully and deliberately accumulated and sought to disseminate such video files over the Internet.

Moreover, on the basis of their training and experience, Detectives Carreiro and Aresco averred that individuals who possess child pornography often will store such material for future viewing and will maintain these materials indefinitely if they believe that their illegal activities have gone undetected. Both detectives also attested that peer-to-peer networks are used frequently to trade child pornography and that information contained within a computer, or other media, remains electronically stored unless the information is deleted and subsequently overwritten. Such statements permitted an inference by the issuing judge that, if the user had child pornography files on the identified computer, the user would still have those files in his or her possession at the time that the search warrant was executed, even though such warrant was not issued until September, 2009, approximately ten months after the state police received the information from the Wyoming special agent. See, e.g., *State* v. *Shields*, 308 Conn. 678, 693, 69 A.3d 293 (2013) (issuing judge may rely on affiant's statements concerning individuals who possess child pornography where affiant has relevant training and experience with such matters), cert. denied, 571 U.S. 1176, 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014).

In consideration of the foregoing, we conclude that the passage of ten months between the receipt of information from the Wyoming special agent and the issuance of the search warrant did not render the information in the search warrant affidavit stale. Rather, it was reasonable for the issuing judge to believe, on the basis of that information, that the items sought to be seized would be found at the time that the search warrant was executed. Therefore, the trial court correctly reaffirmed that probable cause existed to support the issuance of the search warrant and, accordingly, properly denied the defendant's motion to suppress.

## II

The defendant next claims that he is entitled to a judgment of acquittal because the trial court's "evidentiary rulings"[7] were incorrect as a result of the court's failure to recognize that the delay between the execution of the search warrant in 2009 and the issuance of the arrest warrant in 2014 (preaccusation delay) resulted in a violation of his right to due process.[8] The defendant further argues that the state did not present any good reason for the preaccusation delay and that such delay was never justified, was oppressive, and ultimately worked to the benefit of the state. The state

argues that the defendant's due process claim is not reviewable because it was not raised in a pretrial motion to dismiss. We agree with the state.

Because the defendant's due process claim could have been determined without a trial of the general issue, the defendant could have raised the claim by way of a pretrial motion. Practice Book § 41-2 provides: "Any defense, objection or request capable of determination without a trial of the general issue may be raised only by a pretrial motion made in conformity with this chapter." Practice Book § 41-4 provides in relevant part: "Failure by a party, at or within the time provided by [our rules of practice], to raise defenses or objections or to make requests that must be made prior to trial *shall constitute a waiver thereof*, but a judicial authority, for good cause shown, may grant relief from such waiver . . . ." (Emphasis added.) By failing to file a pretrial motion to dismiss on due process grounds, the defendant has waived such claim. See *State* v. *Pickles*, 28 Conn. App. 283, 288, 610 A.2d 716 (1992) ("[b]y failing to raise the due process defense by a timely pretrial motion, the defendant waived her right to raise such a defense later"); see also *State* v. *LaMothe*, 57 Conn. App. 736, 740, 751 A.2d 831 (2000) ("Failure by the defendant to utilize these pretrial motions constituted a waiver. Practice Book § 41-4.").[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 2009) § 53a-196e provides in relevant part: "(a) A person is guilty of possessing child pornography in the second degree when such person knowingly possesses twenty or more but fewer than fifty visual depictions of child pornography. . . ." Hereinafter, all references to § 53a-196e in this opinion are to the 2009 revision of the statute.

[2] According to the search warrant affidavit, a download candidate is a computer that has a certain type of software installed that makes electronic files with specific digital signatures available for download by other computers.

[3] General Statutes § 53a-194 provides in relevant part: "(a) A person is guilty of obscenity when, knowing its content and character, he promotes, or possesses with intent to promote, any obscene material or performance. . . ."

[4] General Statutes § 53a-196b provides in relevant part: "(a) A person is guilty of promoting a minor in an obscene performance when he knowingly promotes any material or performance in which a minor is employed, whether or not such minor receives any consideration, and such material or performance is obscene as to minors notwithstanding that such material or performance is intended for an adult audience.

"(b) For purposes of this section, 'knowingly' means having general knowledge of or reason to know or a belief or ground for belief which warrants further inspection or inquiry as to (1) the character and content of any material or performance which is reasonably susceptible of examination by such person and (2) the age of the minor employed. . . ."

[5] On March 1, 2017, the defendant elected a court trial.

[6] We note that, in the context of a search of property, except for the installation and use of a tracking device, our General Statutes require that a search warrant be executed within ten days of its issuance. General Statutes § 54-33c (b).

[7] Because the defendant does not complain of any particular evidentiary ruling during the trial, we construe the defendant's argument as a reframed challenge to the court's denial of his motion to suppress.

[8] On appeal, the defendant has not provided a separate analysis of his due process claim pursuant to article first, § 8, of the Connecticut constitution

or asserted that our state constitution affords him greater protection than the United States constitution. Rather, the defendant relies upon the right to due process guaranteed by the fifth amendment to the United States constitution, as applied to the states through the fourteenth amendment to the United States constitution. Accordingly, we limit our analysis to the defendant's federal constitutional claim. See *State* v. *Roger B.*, 297 Conn. 607, 611 n.7, 999 A.2d 752 (2010); *State* v. *Miller*, 83 Conn. App. 789, 806 n.5, 851 A.2d 367, cert. denied, 271 Conn. 911, 859 A.2d 573 (2004).

[9] The defendant also cursorily claims that the delays leading up to his arrest, to trial, and to his sentencing date violated his sixth amendment right to a speedy trial. Specifically, he argues, without citation to the record, that these delays caused him to suffer mentally, emotionally, and physically. Furthermore, although he identifies the interests that the right to a speedy trial was designed to protect, he fails to articulate how those interests are implicated in the present case and, instead, sets forth various unsupported, conclusory statements. Accordingly, we decline to consider the defendant's sixth amendment claim because it is inadequately briefed. See *Artiaco* v. *Commissioner of Correction*, 180 Conn. App. 243, 248–49, 182 A.3d 1208 ("Ordinarily, [c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . . [T]he dispositive question in determining whether a claim is adequately briefed is whether the claim is reasonably discernible [from] the record . . . ." [Internal quotation marks omitted.]), cert. denied, 328 Conn. 931, 184 A.3d 758 (2018).