******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
STANLEY VELAZQUEZ
(AC 47335)

Cradle, C. J., and Westbrook and Wilson, Js.

*Syllabus*

Convicted, following a conditional plea of nolo contendere, of the crimes of possession with intent to sell more than one ounce of heroin, possession with intent to sell more than one-half ounce of cocaine, and criminal possession of a firearm, the defendant appealed. He claimed that the trial court improperly denied his motion to suppress certain evidence because the search warrant application and affidavit failed to establish probable cause for the search of his apartment and the seizure of property therein. *Held*:

The trial court properly denied the defendant's motion to suppress, as the search warrant affidavit set forth information given to the affiant police officers by a confidential informant that provided substantial evidence from which the issuing judge could have determined, on the basis of the totality of the circumstances, that a finding of probable cause was warranted.

There was nothing in the trial court's decision denying the motion to suppress that indicated that it improperly considered evidence outside the four corners of the search warrant, as, despite the defendant's claim, there was no indication that the court considered the testimony of one of the affiant police officers in determining whether the warrant established probable cause.

Argued October 10, 2025—officially released January 13, 2026

*Procedural History*

Information charging the defendant with the crimes of possession with intent to sell more than one ounce of heroin, possession with intent to sell more than one-half ounce of cocaine, and criminal possession of a firearm, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, where the court, *E. Richards, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the defendant was presented to the court, *Dayton, J.*, on a conditional plea of nolo contendere; judgment of guilty in accordance with the plea, from which the defendant appealed to this court. *Affirmed.*

*John R. Gulash*, with whom was *Alec C. Gulash*, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's

attorney, and *C. Robert Satti, Jr.*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, C. J. Following a conditional plea of nolo contendere, entered pursuant to General Statutes § 54-94a,[1] the defendant, Stanley Velazquez, appeals from the judgment of conviction of possession with intent to sell more than one ounce of heroin in violation of General Statutes § 21a-278 (a) (1) (A) (i), possession with intent to sell more than one-half ounce of cocaine in violation of § 21a-278 (a) (1) (A) (ii), and criminal possession of a firearm in violation of General Statutes (Rev. to 2019) § 53a-217 (a) (1). The defendant entered his conditional plea after the court denied his motion to suppress evidence seized following the execution of a search warrant at an apartment in which he resided. On appeal, the defendant claims that the court improperly denied his motion to suppress because the search warrant application and affidavit failed to establish probable cause for the search of his apartment and the seizure of property therein. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On July 2, 2019, Officers Michael Paoletti and Doug Bepko (affiants) of the Bridgeport Police Department submitted an application for a search warrant, including a supporting affidavit, requesting authorization to search the defendant's residence in Stratford for firearms and ammunition. The first two paragraphs of the accompanying affidavit

---

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress . . . would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . . A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

identify the affiants and recite their professional qualifications. In the affidavit, the affiants averred: "During the month[s] of June and July, 2019 . . . Paoletti received information from a confidential informant . . . who purported to have personal knowledge that an associate of his, known to the [confidential informant] as Frankie [also known as (aka)] 'King Polo,' was selling quantities of cocaine from his [second] floor residence, located at 2136 Barnum Ave[nue][in]Stratford . . . . The [confidential informant] further advised that Frankie aka 'King Polo' would drive to and from his residence, making drug/narcotics deliveries to his customers in a gray Ford F-150 bearing [Connecticut] registration AL-01506 along with a white Lexus within the city of Bridgeport. Furthermore, Frankie aka 'King Polo' is known to carry a firearm on his person, along with storing a quantity of cocaine on his person. The [confidential informant] knows of this information from having purchased narcotics from Frankie aka 'King Polo' within the past year. This [confidential informant] has provided drug information in the past, which has been corroborated and found to be true accurate [and] credible and furthermore has led to multiple arrests and the seizure of narcotics, and drug proceeds.

"A mugshot photograph from the files of the Bridgeport Police Department of [the defendant] was obtained and shown to the [confidential informant] for identification purposes. The [confidential informant] viewed the photograph and positively identified the male in the photograph as the same person known to him/her as Frankie aka 'King Polo.' . . .

"Within thirty days of authoring said affidavit . . . Paoletti received further information from the [confidential informant] that [the defendant] was physically observed in possession of one firearm located within his residence at 2136 Barnum Ave[nue], [second] floor apartment, in Stratford . . . . The [confidential informant] further advised that [the defendant] resides at this location and stores his firearm within his bedroom

which is the second floor bedroom, left hand side as one enters through the kitchen. The [confidential informant] described the firearm as follows: Firearm #1: black semi-auto firearm.

"A criminal background check for [the defendant] revealed that he is a convicted felon . . . having been charged and convicted of [a]ssault in the [f]irst [d]egree, [a]ssault in the [s]econd [d]egree, [s]ale of [i]llegal drugs, [s]ale of [n]arcotics, [v]iolation of probation, [f]ailure to appear in the first degree, [p]ossession of [n]arcotics and [c]arrying a pistol without a permit. . . .

"2136 Barnum Ave[nue], [second] floor apartment, Stratford . . . is described as a tan with white trim, multifamily residence located on Barnum Ave[nue] between Otis Street and Light Street. The [second] floor apartment is located on the [second] floor and accessed from steps leading to the lone entry door, which leads inside a common way. The [second] floor apartment is accessed within the common area." The search and seizure warrant was signed by a judge of the Superior Court the same day.

The police executed the warrant on July 3, 2019, and seized, inter alia, four loaded firearms, ammunition, narcotics and narcotics paraphernalia. The state thereafter charged the defendant by way of a long form information with possession with intent to sell more than one ounce of heroin in violation of § 21a-278 (a) (1) (A) (i), possession with intent to sell more than one-half ounce of cocaine in violation of § 21a-278 (a) (1) (A) (ii), and criminal possession of a firearm in violation of General Statutes (Rev. to 2019) § 53a-217 (a) (1).

On October 20, 2020, the defendant filed a motion to suppress all evidence seized during the search of his residence on July 3, 2019, on the ground that the search warrant application "failed to establish a sufficient basis for probable cause within the 'four corners' of the search warrant . . . ." Specifically, the defendant argued, inter alia, that "[t]he affidavit in support of the application for the search warrant is wholly devoid of the legally

required basis of the [confidential] informant's knowledge of the information regarding [the] alleged possession of a weapon by the defendant . . . ." On November 13, 2020, the court, *E. Richards, J.*, held an evidentiary hearing regarding the defendant's standing to challenge the search and also heard oral argument on the motion to suppress.

On November 18, 2020, the court issued a memorandum of decision wherein it first concluded that the defendant had a reasonable expectation of privacy in the residence at 2136 Barnum Avenue and, therefore, had standing to contest the search warrant. The court next addressed the merits of the motion to suppress. The court began its analysis by "examining the veracity of the [confidential informant] as articulated within the four corners of the warrant." The court recounted that the affiants averred that "the [confidential informant] had been used in the past and had provided information which had led to [the] arrests of those involved." The court explained that "information from the Bridgeport police that the [confidential informant] had provided reliable information in the past that had led to multiple arrests is an important factor in establishing the confidential informant's reliability." The court further explained that "the warrant affidavit provided that the [confidential informant] had seen the defendant in possession of a firearm in the apartment within a month prior to the . . . signing [of the warrant]." The court noted that the confidential informant identified the specific type of firearm that the defendant kept, where the defendant stored it, provided the floor plan to the premises on Barnum Avenue and directed the affiants as to how to reach the defendant's bedroom. The court found that, "[i]n this regard, the [confidential informant], who has an intimate knowledge of the defendant's floor plan, indicates [that] he had personally purchased narcotics from the defendant in the past and had seen the defendant in possession of a semiautomatic pistol within thirty days of the . . . signing [of the warrant]. This information is enough for the issuing [judge] to reasonably infer that

the confidential informant was a close associate of the defendant. In addition, the information that the [confidential informant] purchased narcotics from the defendant in the past, is a declaration against penal interest which would further boost the reliability and veracity of the [confidential informant] in the eyes of the issuing [judge]." The court found that "the information supplied by the confidential informant that he had seen the defendant, who is a convicted felon, physically possess a firearm provided a substantial factual basis from which the issuing [judge] reasonably could have inferred that a firearm would be found at the apartment." The court therefore concluded that "the information provided in the [search warrant] affidavit, considering the totality of the circumstances contained therein, establishe[d] probable cause to search the defendant's apartment." Accordingly, the court denied the motion to suppress.

The court, *Dayton, J.*, thereafter made a finding that the denial of the defendant's motion to suppress was dispositive of the case, and the defendant entered a written, conditional plea of nolo contendere to possession with intent to sell more than one ounce of heroin in violation of § 21a-278 (a) (1) (A) (i), possession with intent to sell more than one-half ounce of cocaine in violation of § 21a-278 (a) (1) (A) (ii), and criminal possession of a firearm in violation of General Statutes (Rev. to 2019) § 53a-217 (a) (1), conditioned on his right to appeal the denial of his motion to suppress. In accordance with the plea agreement, the defendant was sentenced to a total effective sentence of twenty years of incarceration, execution suspended after ten years, followed by five years of probation. This appeal followed.

The defendant's sole claim on appeal is that the court improperly denied his motion to suppress because the information provided in the search warrant affidavit was insufficient to establish probable cause for the search of the residence. The following legal principles govern our resolution of this claim. "When reviewing the trial court's denial of a motion to suppress, the standard of

review to be applied depends on whether the challenge asserted on appeal is to the factual basis of the trial court's decision or to its legal conclusions. . . . Where . . . the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact. . . . Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . Accordingly, [o]ur review of the question of whether an affidavit in support of an application for a search [and seizure] warrant provides probable cause for the issuance of the warrant is plenary. . . . Because this issue implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . .

"Both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution prescribe that a search warrant shall issue only upon a showing of probable cause. Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . The

determination of probable cause is reached by applying a totality of the circumstances test. . . .

"[Our Supreme Court] has recognized that because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . *we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding*. . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw. . . . In evaluating whether the warrant was predicated on probable cause, a reviewing court may consider only the information set forth in the four corners of the affidavit that was presented to the issuing judge and the reasonable inferences to be drawn therefrom. . . .

"If a search warrant affidavit is based on information provided to the police by a confidential informant, the issuing judge should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the [judge] can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the [judge] is entitled to draw reasonable inferences from the facts presented. . . . Therefore, although no single factor is dispositive, the veracity or reliability and basis of knowledge of [the informant] are highly relevant in the issuing judge's analysis of the totality of the circumstances." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *State* v. *Hamilton*, 232

Conn. App. 809, 815–18, 337 A.3d 1152, cert. denied, 352 Conn. 958, 336 A.3d 1249 (2025).

The defendant asserts two arguments in support of his challenge to the sufficiency of the warrant. He argues that the search warrant affidavit did not contain sufficient detail to establish probable cause and that the trial court improperly went beyond the four corners of the affidavit in assessing its sufficiency. We address each of these arguments in turn with the foregoing principles in mind.

I

The defendant first argues, as he did before the trial court, that the search warrant affidavit does not contain sufficient information to establish the basis for the confidential informant's knowledge regarding the defendant's possession of a firearm. He contends that "[t]he affidavit in this case, devoid of any meaningful detail, failed to provide [a] fundamental basis for crediting the [confidential informant's] tip or the [confidential informant's] basis of knowledge." We disagree.

As noted herein, when considering the adequacy of a probable cause determination, we employ a totality of the circumstances test. Here, the confidential informant was known to the affiants and had provided information in the past that had led to arrests and convictions. It is well settled that "an informant's record of providing information that led to arrests and seizures of contraband is sufficient to establish the reliability of the informant." *State* v. *Smith*, 257 Conn. 216, 224, 777 A.2d 182 (2001). The confidential informant also admitted, against his or her penal interest, to purchasing drugs from the defendant. The information provided by the confidential informant as to the defendant's illegal activities of selling drugs and possessing weapons was consistent with the defendant's criminal history, as set forth in the affidavit, of having been charged with the illegal sale of narcotics and carrying a pistol without a permit. These factors, especially taken together, provided

strong evidence of the informant's reliability. See *State* v. *Griffin*, 339 Conn. 631, 647 n.9, 262 A.3d 44 (2021) (recognizing that "declarations against penal interest by the informant-declarant" and "the reputation and past criminal behavior of the suspect" are two "of the most common factors used to evaluate the reliability of an informant's tip" (internal quotation marks omitted)), cert. denied, ___ U.S. ___, 142 S. Ct. 873, 211 L. Ed. 2d 575 (2022). The confidential informant was an associate of the defendant who had the opportunity to observe the defendant's illegal activities. The confidential informant told Paoletti that he or she had purchased drugs from the defendant and that the defendant was selling cocaine from his residence. The confidential informant provided a detailed description of the floor plan of the defendant's residence, indicating that the defendant's bedroom was on the second floor of the residence, on the "left hand side as one enters through the kitchen." Based on the confidential informant's familiarity with the layout of the defendant's residence, it was reasonable to infer that he or she had been inside the residence. The confidential informant also identified the specific type of firearm that the defendant had in his possession.

The defendant argues that the statement in the affidavit indicating that the defendant "was physically observed in possession of one firearm located within his residence" could not reasonably be based on the confidential informant's personal knowledge or personal observation because the statement was "exclusively in the passive voice . . . ." Although the inference that the confidential informant personally observed the defendant with a firearm would have been better supported by an affirmative statement by the affiants, "we do not require affiants to invoke 'formulaic phrases' in a search warrant affidavit." *State* v. *DeFusco*, 224 Conn. 627, 644, 620 A.2d 746 (1993). Our Supreme Court has explained that "we abjure applying hypertechnical, exacting scrutiny of the grammar and usage in an affidavit in favor of a reasonable interpretation of information set forth within the four corners of the affidavit in the light most favorable

to the issuing judge's determination of probable cause." *State* v. *Holley*, 324 Conn. 344, 358 n.11, 152 A.3d 532 (2016). On the basis of all of the circumstances set forth in the affidavit, particularly the confidential informant's familiarity with the defendant's illegal activities and the layout of his residence and his or her knowledge of the specific type of firearm in the defendant's possession, the issuing judge reasonably could have inferred that the confidential informant physically observed the defendant in possession of the firearm.[2]

Having reviewed the warrant affidavit in the light most favorable to upholding the issuing judge's probable cause determination, we conclude that it established a

[2] In support of his claim that the affiants' use of the passive voice rendered it unreasonable for the issuing judge to infer that the confidential informant personally observed the defendant in possession of a firearm, the defendant relies heavily on *State* v. *Duntz*, 223 Conn. 207, 613 A.2d 224 (1992). In *Duntz*, the affiants referred to "several independent sources of information" and attributed to those sources certain information. (Internal quotation marks omitted.) Id., 217. The affiants also averred that "another source of information (since the [victim's] Homicide) who due to sincere fear of [the defendant] would not document any information or provide testimony, but stated to State Police Investigators that [the defendant] was observed in the possession of a 9 MM Automatic Pistol." (Internal quotation marks omitted.) Id., 219. Our Supreme Court held that there was nothing in the warrant affidavit that would allow the issuing judge reasonably to infer that the police sources had personally observed the defendant in possession of a firearm or to indicate the sources' basis of knowledge. Id., 218. In so holding, the court distinguished the facts in that case from those presented in *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991), noting that "the warrant affidavit [in *Barton*] failed to state explicitly whether the informant personally had observed the facts that he had reported" but "[t]here, we looked to the other facts contained in the affidavit itself and concluded that *the affidavit* provided a substantial basis for the [judge's] inference that the informant was reporting events that he had personally observed." (Emphasis in original; internal quotation marks omitted.) *State* v. *Duntz*, supra, 217–18. Similar to the warrant affidavit in *Barton*, the warrant affidavit in this case provided a substantial basis for the issuing judge's inference that the confidential informant personally observed the defendant in possession of a firearm. The defendant's reliance on *Duntz* is misplaced in that the affidavit in *Duntz* was devoid of any basis upon which the reliability of the informants could have been assessed. As we have discussed, that is not the case here.

substantial factual basis to justify the finding of probable cause. The warrant affidavit sets forth information given to the affiants by a confidential informant that provides substantial evidence from which the issuing judge could have determined, on the basis of the totality of the circumstances, that a finding of probable cause was warranted.

## II

The defendant also argues that the court improperly considered evidence outside the four corners of the warrant in considering whether there had been probable cause for the search of the premises on Barnum Avenue. At the November 13, 2020 hearing on the motion to suppress, the defendant presented the testimony of Paoletti in support of his position that he had a reasonable expectation of privacy in the apartment at Barnum Avenue. At the conclusion of Paoletti's testimony, the court inquired: "I just had one question of this witness regarding his drafting of the warrant. Officer Paoletti, looking at the warrant, you indicate that you got information from a [confidential informant] that [the defendant] was physically observed in possession of a firearm. Was it your understanding that the [confidential informant] personally saw that?" Paoletti responded affirmatively. Defense counsel objected and the following colloquy ensued:

"[Defense Counsel]: Your Honor . . . I would object to eliciting evidence that goes beyond the warrant that's not within the—

"The Court: No. I'm just asking what's in the warrant. The warrant . . . says . . . that within thirty days of offering said affidavit, affiant Paoletti received information, further information from the [confidential informant] that [the defendant] was physically observed in possession of that firearm located within his residence at [2136] Barnum Ave., the second floor apartment. My question—this is one of the affiants, and my question to that affiant . . . was it his understanding since he offered

this warrant that the [confidential informant] personally saw . . . [the defendant].

"[Defense Counsel]: —[A]nd I would object because his understanding isn't the question. It's really going to be the understanding as to what would be communicated to a judge, not what was arguably . . . his impression or arguably communicated and failed to disclose to a judge.

"The Court: Okay.

"[Defense Counsel]: So, I would . . . object to the elicitation of evidence through him that wouldn't be relevant to the ultimate finding that the court's going to be asked to make.

"The Court: All right."

The court asked the prosecutor if he had anything to add, and the prosecutor responded, "I think the court can ask the question, Your Honor." The court then repeated its question to Paoletti, to which Paoletti responded, "Yes. That was my understanding, sir."

The defendant argues that "[i]t was on this improper basis that the trial court based its decision, this improper single question and affirmative response." The defendant contends that the court's inquiry demonstrated that it considered evidence outside the four corners of the search warrant when considering whether the warrant established probable cause for the search. We disagree. Despite the court's inquiry at the hearing, there is nothing in the court's decision indicating that it considered Paoletti's testimony in considering the adequacy of the warrant. As noted herein, it would have been improper for the court to consider information outside the four corners of the warrant in determining whether it established probable cause. See *State* v. *Hamilton*, supra, 232 Conn. App. 817 (reviewing court may consider only information set forth in four corners of affidavit that was presented to issuing judge and reasonable inferences to be drawn therefrom). Despite the court's inquiry of Paoletti as to his understanding of the information

contained in the warrant affidavit, the court commenced its probable cause analysis by expressly stating that it was "examining the veracity of the [confidential informant] as articulated within the four corners of the warrant." Accordingly, we reject the defendant's argument that the trial court improperly considered evidence outside the four corners of the affidavit in sustaining the probable cause determination.

The judgment is affirmed.

In this opinion the other judges concurred.